**J. Michael HAGGREN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3908.**

Court of Appeals of Alaska.

April 10, 1992.

Rehearing Granted May 11, 1992.

Alan L. Schmitt, Jamin, Ebell, Bolger, & Gentry, Kodiak, for appellant.

Joseph N. Levesque, Asst. Dist. Atty., Kenai, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION

MANNHEIMER, Judge.

J. Michael Haggren was convicted of the strict liability violation of operating a com-

mercial drift gill net within 600 feet of a set gill net. 5 AAC 21.335(a). Haggren now appeals both his conviction and his sentence. We affirm.

According to the written findings entered by Superior Court Judge Charles K. Cranston, Haggren was fishing with a drift net approximately 250 feet offshore from a shore fishery lease issued by the City of Kenai to Frank Canady. As Haggren was fishing, Canady placed a set net in the water and began to fish. Believing that the two nets were so close they might become entangled, Canady asked Haggren to pull his gear out of the water and move. Haggren refused. The nets did in fact become entangled, prompting Canady to cut Haggren's net. Canady kept the approximately 1,200 fish that were in Haggren's net.

When Haggren saw Canady on the shore, preparing to set his net, Haggren called the Alaska State Trooper dispatcher. This conversation occurred:

HAGGREN: Is this [Fish & Wildlife] Protection?

DISPATCHER: Yes, it is.

HAGGREN: Yeah, I'd like a clarification on a regulation.

DISPATCHER: Ah, what would you like, sir?

HAGGREN: It's on commercial fishing.

DISPATCHER: What is your question, sir?

HAGGREN: In regards to the distance between set nets and drift nets. The distance between set netters and drift netters is 600 feet. Is it the first net in the water that has the right of way?

After conferring with Fish & Wildlife Patrol Officer Titus, the dispatcher responded that the first net in the water had the right of way. Officer Titus later testified that he based his response on the assumption that there was 600 feet between the set net and the drift net. Officer Titus testified that, had he known all the circumstances, his response would have been that Haggren was obliged to stay 600 feet from the set net.

Judge Cranston found that, even though Haggren had been the first to deploy his net in the area, Haggren had violated 5 AAC 21.335 when, following Canady's deployment of the set net, Haggren had continued to operate his drift net within 600 feet of Canady's set net.

■■■ Haggren argues that, because his net was the first in the water, he had priority and it was Canady who was obliged to deploy his set net more than 600 feet from Haggren's drift net. This court recently adopted a rule of "first in time, first in right" when we interpreted a related regulation, 5 AAC 27.435, which provides: "No set gill net may be set or operated within 600 feet of another set gill net". *Clucas v. State*, 815 P.2d 384 (Alaska App.1991). However, Haggren was charged with violating 5 AAC 21.335(a), a regulation worded in a significantly different way:

*Minimum Distance Between Units of Gear.*

(a) No part of a commercial drift gill net or set gill net may be set or operated within 600 feet of any part of another commercial set gill net.

With respect to two competing commercial set gill nets, this regulation is identical to the one interpreted in *Clucas*. However, between a competing commercial drift gill net and set gill net, the regulation operates differently: it is the conduct of the drift net fisherman that is regulated. A person operating a commercial drift gill net may neither set the net nor continue its operation within 600 feet of a commercial set gill net. Judge Cranston correctly interpreted the regulation; Haggren violated 5 AAC 21.335(a) when he refused to move his drift net after Canady deployed his set net.

■■■ Haggren also argues that, even if 5 AAC 21.335(a) invariably gives set netters priority over drift netters, he still should not be convicted because he reasonably relied on the mistaken advice of the State Troopers that the first net in the water had priority. Generally, a defendant's mistake—even a reasonable mistake—about what the law requires is not a

defense to a criminal (or, as here, a quasi-criminal) charge. *Ostrosky v. State*, 704 P.2d 786, 791 (Alaska App.1985). The legislature has enacted a limited "mistake of law" defense covering situations when a person acts in the reasonable belief that the conduct is required or authorized by a court order, or to carry out court process, or to assist a police officer in carrying out his or her official duties. AS 11.81.420. However, none of these exceptions applies to Haggren's case.

In *Ostrosky*, this court indicated a willingness to entertain an expanded "reasonable mistake of law" defense as a matter of common law. However, the facts presented in *Ostrosky*—a litigant's reliance on a decision of the superior court—fall within the defense established by the legislature. AS 11.81.420(b)(1). Moreover, even under the expansive formulation of the "mistake of law" defense proposed by the Model Penal Code, Haggren's conduct in this case would not be excused.

The broadest formulation of the "reasonable mistake of law" defense is found in Model Penal Code § 2.04(3)(b) (Official Draft, 1962).[1] The Model Penal Code provision suggests that a defendant be excused from criminal liability if he or she acted in reasonable reliance on a mistaken "official statement of law ... contained in (i) a statute or other enactment, (ii) a judicial decision, opinion, or judgment, (iii) an administrative order or grant of permission, or (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the offense."

At his trial, Haggren relied upon his conversation with the State Troopers to argue that he was affirmatively misled about the requirements of the regulation. He also testified that he was aware of a memorandum opinion issued by this court which purportedly held that a drift net fisherman has priority over a set net fisherman who arrives later.

We hold that Haggren cannot rely on a mistaken interpretation of the law provided by the State Trooper dispatcher or the Fish and Wildlife Protection officer whom the dispatcher consulted. As noted above, Haggren's claim is not cognizable under the "mistake of law" defense contained in AS 11.81.420(b). Even under the Model Penal Code's broad formulation of the "mistake of law" defense, a defendant cannot rely on an interpretation of the law provided by a police officer who happens to be available. The defendant must show that he or she relied on an "*official* interpretation" provided by "*the* public officer or body charged by law with ... enforcement of the law defining the offense." We interpret this language to refer to a formal interpretation of the law issued by the chief enforcement officer or agency; it does not encompass extemporaneous legal advice or interpretations given by a subordinate officer.

For this same reason, we reject Haggren's argument that the State was estopped from prosecuting him for violating the regulation. As we have just discussed, the fact that Haggren may have relied on bad legal advice from Officer Titus does not provide Haggren with a defense to the charge. While the case might be different if Titus or some other state official had ordered Haggren to put his drift net in the water or had directed Haggren to continue operating his drift net after Canady deployed the set net, this did not happen here.

Haggren also claims that he relied on a memorandum opinion of this court. Both Alaska Appellate Rule 214(d) and Court of Appeals Order No. 3 state that unpublished opinions have no precedential effect and are not to be cited as legal authority. Given this, we doubt that it would ever be reasonable for a defendant to rely on a statement of law contained in an unpublished decision of this court (unless the defendant was a party to the case). Moreover, even if a memorandum opinion could

1. Our characterization of the Model Penal Code provision as the broadest formulation of the defense is based on the statutes cited in the Commentary to § 2.04(3), none of which appear

to define the defense in the expansive form advocated by the Model Penal Code. American Law Institute, *Model Penal Code and Commentaries* (1985), Part I, pp. 274–280, nn. 20–34.

be relied upon to establish a defendant's reasonable mistake of law, Haggren has misinterpreted the memorandum opinion he alluded to in district court; the ruling in that case does not apply to the facts of Haggren's case.

Finally, we note the general rule suggested in *W. LaFave & A. Scott, Substantive Criminal Law* (1986), § 5.1(a), Vol. 1, pp. 575–77, that mistake of law should constitute a defense only if the mistake negates the existence of the culpable mental state required to establish the crime. This rule is incorporated in the Model Penal Code, § 2.04(1), and it is supported by the statutes listed in the Commentary to the Model Penal Code. *See* American Law Institute, *Model Penal Code and Commentaries* (1985), Part I, pp. 270–72, nn. 2–8. This interpretation of the defense would make it unavailable in a strict liability prosecution like Haggren's.

In his brief, Haggren argues that 5 AAC 21.335(a) is "void for vagueness". However, Haggren's arguments under this heading are actually (1) that 5 AAC 21.335(a) does not establish a priority for set netters, and (2) that if the regulation does establish such a priority, this is not good policy. We have already rejected Haggren's argument concerning the proper interpretation of the regulation. Haggren's second argument should be addressed to the legislature or to the Board of Fisheries, not to this court.

 Haggren's final argument on appeal is that his sentence is excessive. Judge Cranston sentenced Haggren to a fine of $6,000 with $2,700 suspended. He also ordered Haggren to pay a forfeiture of $1,700, representing the fair-market value of the fish Haggren caught while fishing in violation of the regulation. Because Haggren was not sentenced to a term of imprisonment of at least 45 days, he has no right to appeal his sentence. *Johnson v. State*, 816 P.2d 220 (Alaska App.1991).

The judgement of the district court is AFFIRMED.