**Don L. GIBSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Jerry E. NEWCOMB, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–6082, A–6162.**

Court of Appeals of Alaska.

Jan. 17, 1997.

James H. Cannon, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant Gibson.

Bethany P. Spalding, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant Newcomb.

Marlin D. Smith, Assistant District Attorney, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee in case no. A–6082.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee in case no. A–6162.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

COATS, Judge.

Don L. Gibson and Jerry E. Newcomb each pleaded no contest to the charge of misconduct involving weapons in the fourth degree, possessing a firearm on the person while impaired by intoxicating liquor. Each defendant preserved the right to argue on

appeal that the misconduct involving weapons statute was unconstitutional when applied to people in their own homes or on their own property.

Newcomb was arrested after State Trooper Tellep went to Newcomb's home in response to a report that Newcomb was intoxicated and firing a weapon. Tellep knocked on Newcomb's door and when Newcomb opened the door Tellep saw Newcomb in an intoxicated condition and in physical possession of a handgun.

The troopers were called to Gibson's residence by a tow-truck operator who was alarmed to encounter Gibson armed with an AK–47 semi-automatic rifle when he came onto the property to tow a taxi cab that had become stuck in the mud. The troopers found Gibson intoxicated and holding the AK–47.

Newcomb and Gibson were convicted of violating AS 11.61.210(a)(1), which provides in relevant part:

(a) A person commits the crime of misconduct involving weapons in the fourth degree if the person

(1) possesses on the person … a firearm when the person's physical or mental condition is impaired as a result of the introduction of an intoxicating liquor or a controlled substance into the person's body[.]

■ The appellants argue that application of this statute to persons who possess firearms while intoxicated in their homes or on their residential property is unconstitutional. Citing their rights under the Alaska Constitution to privacy and to keep and bear arms, the appellants assert that possession of firearms in the home is protected conduct, immune from regulation by the state.

In 1994 the people of Alaska amended Article I, Section 19 of the Alaska Constitution. That section now provides:

A well-regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed. The individual right to keep and bear arms shall not be denied or infringed by the State or a political subdivision of the State.

The 1994 amendment added the second sentence. Although Article I, Section 19 declares that the government shall not deny or infringe "[t]he individual right to keep and bear arms," the provision does not define the scope of this protected right. To determine the scope of the individual right protected in Article I, Section 19, we must consider the history of the provision and, specifically, what the history reveals of the drafters' intent. *Cook v. Botelho,* 921 P.2d 1126, 1128–29, 1132–33 (Alaska 1996).

Based upon the legislative history of Article I, Section 19, we conclude that this provision was not intended to eliminate government regulation of people's possession and use of firearms. Rather, the government retains the authority to enact and enforce laws prohibiting people from possessing firearms when there is a significant risk that they will use those firearms in a criminal or dangerous fashion.

As originally adopted, Article I, Section 19 consisted of only one sentence, what is now the first sentence of the section. The second sentence of Article I, Section 19 was proposed by the legislature in 1994. *See* Leg. Res. 45, 18th Alaska Leg., 2d Sess. (1994). In conformity with Article XIII, Section 1 of the state constitution, the legislature's proposed amendment was placed before the voters at the next general election, as Ballot Measure No. 1. (The measure passed and the new version of Article I, Section 19 went into effect on December 30, 1994.)

Legislative Resolve No. 45 was initially introduced as Senate Proposed Joint Resolution No. 39. At House and Senate hearings, the sponsors and supporters of this legislation stated and testified that the bill was not intended to abrogate the current statutes regulating firearms. *See, e.g., Hearing on SJR 39 Before the Senate Comm. on State Affairs,* 18th Alaska Leg., 2d Sess., Tape 94–2 Side B No. 273 (January 21, 1994) (statement of Portia Babcock, Committee aide); *Hearing on SJR 39 Before the Senate Comm. on the Judiciary,* 18th Alaska Leg., 2d Sess., Tape 94–6 Side B No. 240 (February 4, 1994) (statement of Senator Loren Leman, Chairman, State Affairs Committee; prime spon-

sor); *Hearing on SJR 39 Before the House Comm. on the Judiciary,* 18th Alaska Leg., 2d Sess., Tape 94–60 Side A No. 287 (April 16, 1994) (statement of Portia Babcock, Senate State Affairs Committee aide).

Perhaps more important to determining the intent of the voters who approved the constitutional amendment is the statement in support of Ballot Measure No. 1 that appeared in the Division of Elections' 1994 official election pamphlet. This statement, which was prepared by advocates of the proposed amendment (*see* AS 15.58.020(6)(D)), assured voters that a "yes" vote

> [would] NOT overturn or invalidate state laws restricting access or possession of arms by convicted felons, mental incompetents, illegal aliens, *those under the influence of drugs or alcohol,* juveniles, or in school buildings. These laws are well-established and have been consistently upheld in Courts across the nation, even when considered under the toughest legal standard and under constitutional language more stringent than is proposed by Ballot Measure # 1.

(Capitalized emphasis in the original; italicized emphasis added.) Because the advocates of the proposed amendment presented it to the voters in this fashion, and because the history of the proposed amendment contains no indications of a contrary intent, we conclude that the people who voted in favor of the amendment did not intend to invalidate Alaska's laws regulating the possession of firearms by intoxicated persons. *See State v. Brown,* 571 A.2d 816, 818 (Me.1990).

▮ The appellants argue that the individual right to bear arms and the previously adopted state constitutional right to privacy[1] combine to create special constitutional protection for possession of firearms in the home. They point to the Alaska Supreme Court's recognition of "the distinctive nature of the home as a place where the individual's privacy receives special protection." *Ravin v. State,* 537 P.2d 494, 503 (Alaska 1975). Still, the appellants concede that neither the individual right to bear arms nor the right to privacy in the home is absolute. Even fundamental rights such as privacy in the home may be restricted if the restriction bears a close and substantial relationship to a legitimate governmental interest. *Ravin,* 537 P.2d at 498, 511.

▮ Paramount among the legitimate governmental interests meriting infringements on individual rights is the state's need to protect the health and welfare of its citizens. *See State v. Erickson,* 574 P.2d 1, 21–22 (Alaska 1978); *Ravin,* 537 P.2d at 501, 504. The right to privacy in the home "must yield when it interferes in a serious manner with the health, safety, rights and privileges of others or with the public welfare. No one has an absolute right to do things in the privacy of his own home which will affect himself or others adversely." *Ravin,* 537 P.2d at 504.

The potential for harm to health and safety resulting from the possession and use of firearms by intoxicated persons in their homes is well documented in the case law of this state. *See, e.g., State v. Johnson,* 720 P.2d 37 (Alaska 1986) (intoxicated man fires a shot from inside his house, killing his sister who was outside the front door); *Norris v. State,* 857 P.2d 349 (Alaska App.1993) (man shoots and kills live-in girlfriend during a fight in the home while both are intoxicated); *Odom v. State,* 798 P.2d 353 (Alaska App. 1990) (after a night of drinking and using cocaine, man shoots and kills houseguest); *Abruska v. State,* 705 P.2d 1261 (Alaska App. 1985) (man drinking at home shoots and kills drinking companion after an argument). People who handle firearms while intoxicated, even in their own homes, pose a significant threat to the health and safety of their family members, their neighbors and themselves.

Alaska's statute prohibiting the possession of firearms while intoxicated bears a close and substantial relationship to the state's legitimate interest in protecting the health and safety of its citizens. Whatever constitutional problems this statute might pose as

---

1. Alaska Const. Art. I, § 22.

applied to instances of constructive possession, it poses no constitutional problem as applied to the defendants in the present cases, who were in actual physical possession of firearms while intoxicated.

The judgments against Gibson and Newcomb are AFFIRMED.