**Clarence MORGAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–6200.**

Court of Appeals of Alaska.

Aug. 8, 1997.

---

G. Blair McCune, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., MANNHEIMER, J., and RABINOWITZ, Senior Supreme Court Justice.*

MANNHEIMER, Judge.

Clarence Morgan appeals his conviction for third-degree misconduct involving weapons, AS 11.61.200(a). Morgan was convicted under subsection (a)(10) of the statute, which prohibits a convicted felon from residing in a dwelling when the felon knows that there is a concealable firearm in the dwelling, unless a court or the head of the local law enforcement agency has given the felon written permission to live there.[1]

Morgan argues (under two different legal theories) that subsection (a)(10) can not be enforced against a person who was unaware of the statute's existence at the time of the offense. Morgan also argues that subsection (a)(10) impermissibly infringes on a felon's constitutional right of free association with family and friends. Finally, Morgan argues that subsection (a)(10) violates the right to bear arms recognized by Article I, Section 19 of the Alaska Constitution. As explained in more detail below, we reject each of Mor-

---

* Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

1. AS 11.61.200(a)(10) states that a felon commits the crime of misconduct involving weapons in the third degree if he or she

 resides in a dwelling knowing that there is a firearm capable of being concealed on one's person or a prohibited weapon in the dwelling[,] ... unless the person has written authorization to live in a dwelling in which there is a concealable weapon described in this paragraph from a court of competent jurisdiction or from the head of the law enforcement agency of the community in which the dwelling is located.

gan's claims and we therefore affirm his conviction.

Morgan also appeals the 5–year composite sentence that he received for (1) the present weapons offense, (2) the revocation of his probation from a previous felony assault conviction, and (3) a driving while intoxicated offense that Morgan committed four days before he was indicted on the weapons offense. For the reasons explained below, we affirm Morgan's sentence.

In 1991, Morgan was convicted of a felony—third-degree assault. In April 1995, while still on probation from this felony conviction, Morgan was living in Bethel with his wife and her two children. On the evening of April 22nd–23rd, Morgan got into an argument with his wife's son; this argument escalated into violence when Morgan kicked down the door to his stepson's room. Morgan's wife told him to leave the home. In response, Morgan went to the living room, retrieved a handgun that was kept there, and also picked up ammunition for the pistol. Holding the pistol and the ammunition, Morgan approached his stepson. The stepson struggled with Morgan for control of the handgun, and he eventually knocked the pistol from Morgan's hand.

While this struggle was taking place, Morgan's wife attempted to call the police. Morgan (having lost control of the handgun) grabbed the telephone from his wife and broke it. However, the stepson used another telephone to call 911.

With the police en route, Morgan threw a towel over the pistol in an apparent attempt to conceal it. However, when the officers arrived, they spied the pistol and seized it.

Based on this incident, Morgan was indicted for third-degree weapons misconduct under AS 11.61.200(a)(10)—that is, residing in a dwelling with the knowledge that the dwelling contained a concealable firearm. As indicated above, the testimony at Morgan's trial revealed that Morgan actually possessed the handgun during this episode. Moreover, Morgan's wife and stepson testified that, although the pistol belonged to the stepson, Morgan used the pistol regularly and purchased ammunition for it. Morgan himself admitted at his trial that he had used the pistol.

On appeal, Morgan asserts that AS 11.61.200(a)(10) is such an obscure provision of law that reasonable people can not be expected to know of its existence, and that therefore the statute can not be enforced against felons who are not aware of it. In his brief, Morgan phrases this argument as a "vagueness" challenge to the statute—apparently because one of the rationales for prohibiting overly vague statutes is that such statutes fail to give people adequate notice of what conduct the law requires or prohibits. But Morgan does not assert that the language of AS 11.61.200(a)(10) is too imprecise or ambiguous to be understood by people of ordinary intelligence. Rather, Morgan argues that AS 11.61.200(a)(10) is a recently enacted statute that is not yet widely known, and therefore it is unreasonable to expect felons to obey the statute. Morgan states in his brief:

> It might be argued that [the statute is constitutional because it] requires the state to prove that the person convicted of the felony knows that there is a [concealable] firearm in the dwelling ... [and because] the statute ... allows someone to get permission from a court or local law enforcement agency [to reside in a dwelling where a handgun is kept]. However, a person would have to know about the statute first before being able to take appropriate action to avoid criminal liability. If a [felon] knows that it is illegal to live in a dwelling where there is a concealable firearm, he or she can avoid trouble relatively easily. Similarly, if one knows that one can avoid criminal liability by going to the local court or police chief and getting written authorization, that action can be taken. On the other hand, if a person does not know about this law, there is no reason to suppose [that] he or she would take the appropriate steps. Because this statute is so obscure, felons can easily and unwittingly end up violating the law.

This argument is not a "vagueness" argument. Rather, it is an "ignorance of the law" argument, and this argument is inconsistent

with both the Alaska statutes and prior decisions of this court.

AS 11.81.620(a) declares that, unless a criminal statute clearly specifies otherwise, neither "[k]nowledge ... as to whether [a person's] conduct constitutes an offense" nor "knowledge ... of the provision of law defining an offense" is an element of an offense. More particularly, with respect to the statute prohibiting felons from possessing concealable firearms, this court has repeatedly held that a felon commits this offense even when the felon is unaware of the statute. For example, in *Afcan v. State*, 711 P.2d 1198, 1199 (Alaska App.1986), the defendant raised a due process (lack of notice) challenge to the felon-in-possession statute under *Hentzner v. State*, 613 P.2d 821 (Alaska 1980), and *Speidel v. State*, 460 P.2d 77 (Alaska 1969). This court rejected the defendant's *Hentzner–Speidel* argument and held that the State need not prove that the felon was aware of the statutory prohibition on the possession of concealable firearms. *See also McCracken v. State*, 743 P.2d 382, 384 (Alaska App.1987) (declining to overrule *Afcan* ).

Morgan concedes that *Afcan* appears to be against him, but he argues that *Afcan* is distinguishable: he asserts that the law forbidding felons from residing in a dwelling that contains a concealable firearm is far less widely known than the law forbidding felons from possessing a concealable firearm. Even if we assume for purposes of argument that many felons are ignorant of AS 11.61.200(a)(10), the statute would still be enforceable. It is widely known that felons are subject to a variety of legal disabilities and restrictions. It is therefore reasonable to hold felons to a duty of inquiry concerning these restrictions. For example, in *Kinney v. State*, 927 P.2d 1289, 1294 (Alaska App. 1996), we held that, in light of widespread knowledge that the sale of alcoholic beverages is regulated, the State could convict a defendant of bootlegging without proving that the defendant was aware of the statute prohibiting him from arranging a sale of liquor. Compare *Hentzner*, where the supreme court held that a miner who engaged in the traditional practice of asking people to advance him a "grubstake" could not be con-

victed of "wilfully" failing to register this investment contract without proof that he was at least aware of a substantial possibility that his activities might be regulated by the securities laws. *Hentzner*, 613 P.2d at 825–26, explained in *Kinney*, 927 P.2d at 1292–94.

We also note that AS 11.61.200(a)(10), while relatively new, appears to be a modest statutory extension of the traditional rule regarding a felon's "constructive possession" of a concealable firearm. Before the enactment of AS 11.61.200(a)(10), a felon could be convicted of "possessing" a concealable firearm that was not in his or her immediate physical possession if the State could establish that the felon had effective dominion or control over the firearm. *See*, for example, *Baker v. State*, 781 P.2d 1368, 1369 (Alaska App.1989). One plausible rationale for AS 11.61.200(a)(10) is the determination that a felon's act of residing in a dwelling, knowing that a concealable firearm is kept there, should be criminal because it is sufficiently similar to constructive possession, at least unless a court or a law enforcement agency has approved the living arrangement.

■ For these reasons, we hold that a felon can be convicted of violating AS 11.61.200(a)(10) even if the felon was unaware of this provision of law. A sentencing court is, of course, free to consider a felon's good-faith ignorance of the law when determining his or her sentence. However, there was no reason for the superior court to consider this potential theory of extenuation in Morgan's case, as the evidence showed that Morgan did much more than simply reside in a dwelling where a concealable firearm was kept. Morgan constructively possessed the pistol (by exercising dominion or control over it), he physically possessed the pistol during his confrontation with his stepson, and he actually used the pistol on a regular basis.

■ Morgan argues, in the alternative, that AS 11.61.200(a)(10) infringes on his First Amendment right of association because it prohibits him from living with his family. However, Morgan's claim is entirely speculative. Morgan does not assert that his stepson is unwilling to keep the handgun elsewhere. Moreover, as noted above, AS 11.61.200(a)(10) allows a felon to reside in a

dwelling that contains a concealable firearm if the felon obtains permission from a court or the local law enforcement agency. Morgan does not assert that he ever applied for permission to live in the dwelling despite the presence of the handgun, nor does Morgan assert that such permission was unreasonably refused.

▮▮▮▮ Morgan next argues that AS 11.61.200(a)(10) infringes on his right to keep and bear arms, guaranteed by Article I, Section 19 of the Alaska Constitution. However, we recently held that this provision of the state constitution "was not intended to eliminate government regulation of people's possession and use of firearms." *Gibson v. State*, 930 P.2d 1300, 1301 (Alaska App.1997). Even though Article I, Section 19 guarantees the right to keep and bear arms, "the government retains the authority to enact and enforce laws prohibiting people from possessing firearms when there is a significant risk that they will use those firearms in a criminal or dangerous fashion." *Id.* Based on our holding in *Gibson*, we reject Morgan's contention that AS 11.61.200(a)(10) violates Article I, Section 19 of the Alaska Constitution.

Having addressed and rejected Morgan's various arguments that AS 11.61.200(a)(10) is unconstitutional, we now turn to Morgan's argument that he should have been acquitted under the doctrine of "mistake of law". Normally, it is no defense to a criminal charge that the defendant is ignorant of the law governing his or her conduct, or that the defendant has a mistaken understanding of that law. Morgan argues, however, that he should not be held accountable for his violation of AS 11.61.200(a)(10) because, after he was placed on probation from his 1991 felony conviction, his probation officer failed to inform him of this statutory restriction on his place of dwelling.

The Alaska legislature has created a limited "mistake of law" defense; AS 11.81.420(a) and (b)(1) declare that conduct which would otherwise constitute an offense is justified when the defendant reasonably believes that the conduct "is required or authorized by law or by a judicial decree, judgment, or order". This court reached a similar result under the common law in *Ostrosky v. State*, 704 P.2d

786 (Alaska App.1985), *on remand,* 725 P.2d 1087 (Alaska App.1986). The defendant in *Ostrosky* had litigated an issue of law against the State (the constitutionality of the Limited Entry Act, the State's regulation of commercial fishing), and had prevailed in the superior court. While the superior court's decision was on appeal, Ostrosky engaged in commercial fishing in violation of the Limited Entry Act (the law that the superior court had ruled unconstitutional), and the State charged him with a criminal offense. This court held that, under these circumstances, Ostrosky was entitled to argue that he reasonably and in good faith relied on the superior court's ruling. *Ostrosky,* 704 P.2d at 792.

However, we held in *Haggren v. State,* 829 P.2d 842 (Alaska App.1992), that a person is not entitled to rely on a mistaken statement or interpretation of law received from a police officer. We noted that even under the Model Penal Code, which contains the broadest formulation of the "mistake of law" defense,

> [t]he defendant must show that he or she relied on an "*official* interpretation" provided by "*the* public officer or body charged by law with . . . enforcement of the law defining the offense."

*Haggren,* 829 P.2d at 844 (emphasis in the original). We interpreted this language to mean that a defendant claiming mistake of law must assert reliance on

> a formal interpretation of the law issued by the chief enforcement officer or agency; it does not encompass extemporaneous legal advice or interpretations given by a subordinate officer.

*Id.* Thus, "the fact that [a defendant] may have relied on bad legal advice from [a police officer] does not provide [the defendant] with a defense to [a criminal] charge." *Id.*

▮▮▮▮ As noted above, Morgan's claim of mistake of law is based on the assertion that his probation officer failed to inform him of the law governing his conduct. This is not a sufficient basis for a mistake-of-law claim. Under *Haggren,* even if Morgan's probation officer had affirmatively told him that it was all right to reside in a dwelling where a

concealable firearm was kept, this would not be a defense. Morgan's position is even weaker: he does not assert that his probation officer misled him concerning the law, but only that the probation officer failed to inform him of the law.

When all is said, Morgan's "mistake of law" claim is simply a recasting of his argument that he should not be punished for violating a law that he did not know about. We again reject this argument, and we uphold Morgan's conviction for third-degree weapons misconduct.[2]

We now turn to Morgan's sentence appeal. Third-degree weapons misconduct is a class C felony. AS 11.61.200(g). Because Morgan was a third felony offender, he faced a presumptive term of 3 years' imprisonment for this offense. AS 12.55.125(e)(2). The State proved several aggravating factors under AS 12.55.155(c); Morgan proved no mitigating factors under AS 12.55.155(d), and he did not establish grounds for referring his case to the three-judge sentencing panel. Under these circumstances, the 3–year presumptive term was effectively the minimum sentence that the superior court could impose for Morgan's weapons offense. Superior Court Judge Dale O. Curda sentenced Morgan to 5 years' imprisonment with 2 years suspended (3 years to serve).

At the same time, Judge Curda sentenced Morgan to 365 days' imprisonment with 345 days suspended (20 days to serve) for driving while intoxicated. Morgan committed this driving offense shortly before he was indicted for weapons misconduct.

Finally, Judge Curda revoked Morgan's probation from his 1991 third-degree assault conviction. (This revocation was based on three allegations: the weapons misconduct, the driving while intoxicated, and a misdemeanor assault that Morgan had perpetrated on his wife in 1994.) The judge sentenced Morgan to serve 2 years' imprisonment that had previously been suspended for the 1991 assault.

These three sentences were imposed consecutively. Thus, Morgan received a composite term of 5 years and 20 days to serve.

Morgan argues that his total time to serve is excessive. He recognizes that he received the minimum time to serve for his weapons offense, and he does not appeal that sentence. Rather, Morgan argues that the superior court should not have imposed the 2 years' imprisonment from his 1991 assault conviction.

In his sentencing remarks, Judge Curda noted that Morgan had a lengthy criminal record, even before the 1991 assault conviction. The pre-sentence report reveals that Morgan was adjudicated a delinquent minor for assault and theft. His juvenile probation was repeatedly revoked—for criminal mischief, for unlawful evasion, and for two burglaries. As an adult (prior to 1991), Morgan was convicted of assault, escape, and numerous moving traffic violations—including a conviction for driving while intoxicated that was entered only a few months before the incident in Aniak that led to Morgan's conviction for third-degree assault.

Morgan's 1991 assault conviction involved an episode of reckless driving in Aniak. Morgan was driving a vehicle that contained five passengers. He was intoxicated and, even though the posted speed limit was 25 miles per hour, he was driving at a speed of approximately 60–80 miles per hour. His wife asked him to slow down, but he disregarded her entreaty. The vehicle hit an embankment, flew through the air for about 50 feet, and then rolled over several times. Four of the passengers had to be medivacked to Bethel for treatment.

Judge Curda's sentencing remarks show that one of the judge's primary concerns was Morgan's continued drinking and Morgan's continued dangerous or reckless behavior when he was drunk. The judge noted that

---

**2.** Although we reject Morgan's assertion that he should be excused from his violation of the law, we suggest to the Department of Corrections that it may be worthwhile to amend the standard felony probation form to include specific notice of the requirements of AS 11.61.200(a)(10). We recognize that some felons are never placed on probation (and thus never receive the probation form); nevertheless, amending the probation form would help to spread knowledge of this law among the people affected by it.

Morgan's 1995 driving while intoxicated offense involved yet another aggravated instance of dangerous driving: Morgan was driving with a blood-alcohol level of twice the legal limit, and he was traveling at 57 miles per hour near the Bethel hospital.

Judge Curda found that, even though Morgan had been convicted of residing in a house where a concealable firearm was kept, Morgan's conduct was in fact more serious: Morgan took physical control of the handgun during a domestic dispute; and, during his confrontation with his stepson, Morgan had the pistol and its ammunition in his hands, apparently ready to make use of them.

Based on Morgan's criminal history and the circumstances of his weapons offense, Judge Curda found that Morgan was a "worst offender" for purposes of the weapons offense—a finding that would have justified imposition of the maximum 5–year term for that offense alone. (As noted above, Judge Curda imposed only 3 years to serve for that offense.) And during his sentencing remarks concerning the revocation of Morgan's probation from the 1991 assault conviction, Judge Curda stated that his sole sentencing goal was "isolation"—an implicit finding that Morgan could not be deterred from drinking and engaging in life-threatening behavior, and that the public safety required his incarceration.

 Morgan argues that he still has rehabilitative potential and that a lesser probation revocation sentence would have been justified. However, Morgan's record is hardly promising, and Judge Curda could justifiably discount Morgan's optimistic view of his potential for rehabilitation. Having independently examined the record, we conclude that Morgan's composite sentence of 5 years (and 20 days) to serve is not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The judgement of the superior court is AFFIRMED.