Rayme Dean STEVENS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9137.

Court of Appeals of Alaska.

April 21, 2006.

Rehearing Denied June 2, 2006.

Lawrence F. Reger and Robert John, Fairbanks, for the Appellant.

Jill S. Dolan, Assistant District Attorney, and Jeffrey A. O'Bryant, District Attorney,

Fairbanks, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

MANNHEIMER, Judge.

Rayme Dean Stevens's driver's license was revoked as a result of his March 2004 conviction for driving under the influence. Three months later, in June of that year, the Nenana police observed Stevens driving a four-wheeler (*i.e.*, a four-wheeled all-terrain vehicle) on the streets of Nenana. Based on this conduct, Stevens was charged with the offense of driving a motor vehicle on a highway at a time when his license was revoked, AS 28.15.291(a).

Stevens ultimately pleaded no contest to this charge, but he reserved his right to argue on appeal that, even when a person's driver's license has been revoked, AS 28.15.291(a) does not prohibit that person from driving an all-terrain vehicle on a highway.

*When a person's driver's license is suspended or revoked, does AS 28.15.291(a)(1) prohibit that person from driving any motor vehicle on a highway, even if the motor vehicle is of a type for which no license is required?*

AS 28.15.291(a)(1) states that it is illegal for a person to "drive[ ] a motor vehicle on a highway or vehicular way or area at a time when that person's driver's license . . . or privilege to obtain a license has been canceled, suspended, or revoked in this [state] or another jurisdiction". In *State v. Straetz*, 758 P.2d 133 (Alaska App.1988), this Court was confronted with the following question: does this statute forbid a person whose driver's license has been suspended or revoked from driving a motor vehicle on a highway even if the motor vehicle in question is of a type for which no license is required?

The facts of *Straetz* were essentially the same as the facts of the present case: the defendant was found driving a three-wheeler on a city street in Fairbanks at a time when his driver's license was suspended.[1] And the defendant in *Straetz* made the same argument that Stevens makes in the present case; that is, the defendant in *Straetz* argued that because he was driving an off-road vehicle (albeit on a road), and because Alaska law does not require a license to operate an off-road vehicle, his conduct was not prohibited by AS 28.15.291(a).

This Court rejected this argument:

> While it is true that . . . the driver of a three-wheeler is not required to have a driver's license, the express and unambiguous terms of AS 28.15.291(a) prohibited Straetz from driving *any* motor vehicle on a highway once his operator's license was suspended. The prohibition did not hinge on the nature of the motor vehicle, but rather on Straetz's demonstrated danger as a driver, as evidenced by his license suspension. Alaska Statute 28.15.291(a) creates no exception that would allow a driver whose license has been suspended to drive on a highway in a motor vehicle that does not require a licensed driver. The statute, on its face, applies to all motor vehicles. . . . We see nothing irrational in the legislature's apparent conclusion that a person whose license has been suspended should be prohibited from driving any motor vehicle on a highway, even one for which an operator's license would not otherwise be required.

*Straetz*, 758 P.2d at 134–35 (emphasis added).

This Court's decision in *Straetz* appears to be dispositive of Stevens's appeal. Stevens argues, however, that the Alaska Legislature has since impliedly amended AS 28.15.291(a) in a manner that overturns the construction of the statute that this Court adopted in *Straetz*.

Stevens relies on a statute passed in 2002, AS 28.15.021(5). This statute declares that no driver's license is needed to drive or operate "an off-highway vehicle, watercraft, aircraft, or other vehicle not designed for highway use as specified by the [D]epartment [of Public Safety] by regulation".

---

1. *Straetz*, 758 P.2d at 134.

Stevens argues that this statute is not limited to the off-road operation of off-highway vehicles. Instead, Stevens contends that this statute exempts the operation of off-highway vehicles from any licensing requirement, even if a person is driving the off-highway vehicle on a highway. According to Stevens, the legislature's purpose in enacting AS 28.15.021(5) was to "permit all persons, even young [and] inexperienced children, . . . to operate off-highway vehicles on highways[,] regardless of whether they . . . have a license."

And, based on this interpretation of AS 28.15.021(5), Stevens renews the argument that we rejected in *Straetz:* the argument that, since no driver's license is required to operate an off-highway vehicle, AS 28.15.291(a) should not be interpreted to forbid people with suspended or revoked licenses from driving off-highway vehicles on a highway. Stevens argues that if the legislature intended to allow young and inexperienced children to drive off-highway vehicles on city streets, the legislature must also have intended to allow people whose licenses are suspended or revoked to do the same.

*Why we reject Stevens's proposed interpretation of AS 28.15.021(5)*

■ AS 28.15.021(5) began life as House Bill 397 (22nd Legislature). The House Transportation Committee's file on House Bill 397 provides the background on this bill.

During the preparation of a "Winter Transportation Study" of snowmobile use in Alaska, various state officials became aware that operators of snowmobiles and other off-road vehicles (as well as operators of planes and boats) were required to possess an Alaska driver's license to operate those vehicles.[2] In 2002, the State issued a brochure announcing this little-known fact. Before long,

Rep. Vic Kohring, who was then chairman of the House Transportation Committee, introduced a bill to exempt off-road vehicles from this license requirement.[3]

Initially, House Bill 397 only exempted snowmobile operators from the licensing requirement. But the substitute bill ultimately passed by the legislature exempted all types of off-road motor vehicles, including all-terrain vehicles.[4] Rep. Kohring, in a sponsor statement, explained the rationale for this substitute measure:

> For state government to require a person to pass a test to drive a car appears to have nothing in common with running a boat on a lake or river, flying a plane, or riding an ATV while hunting. Those who depend on snowmobiles, boats, and ATVs for basic transportation to work, hunt, and fish in many parts of Alaska need to have their rights protected.

But the legislature never intended for this new driver's license exemption to apply when off-road vehicles were driven on public streets. In his sponsor statement, Rep. Kohring declared that the new law "ends a state legal requirement for operators of all types of off-road motor vehicles (boat, plane, all-terrain vehicle, or snowmachines) to have an automobile driver's license to operate on public properties, *other than on roads.*" (Emphasis added)[5] Similarly, a press release issued by Rep. Kohring on February 19, 2002 (found in the House Transportation Committee file) states: "While the bill would free drivers of off-road vehicles from having to have a valid driver's license, licenses would still be required to operate such vehicles on public roads." A memorandum of "talking points" dated February 21, 2002 (also included in the Transportation Committee file) states:

---

**2.** See, for example, (1) the minutes of the House Transportation Committee's hearing on HB 397 (February 21, 2002) (comments by Mike Krieber, staff to Rep. Vic Kohring, who was a sponsor of the bill); (2) Sponsor Statement, HB 397 (undated); (3) Anchorage Daily News editorial, "Safety First" (February 14, 2002); (4) Anchorage Daily News article, "What the . . . ? Snowmobilers need a driver's license" (February 5, 2002); and (5) Alaska Department of Transportation & Pub-

lic Facilities, "Winter Transportation Study" (undated draft).

**3.** *See* Sponsor Statement, HB 397 (contained in the House Transportation Committee File on HB 397).

**4.** SLA 2002, ch. 140, § 1.

**5.** Sponsor Statement, HB 397.

A driver's license is still required to operate any type of motor vehicle, snow-machines included, on roads. (Rationale: if you are going to be on the roadway, you need to know how driving rules and laws apply in order to operate safely.)

And in an e-mail to a constituent (also found in the Committee file), a member of Rep. Kohring's staff (Mike Krieber) told the constituent: "Please note that the bill that unanimously passed out of the Transportation Committee will STILL require[ ] driver's licenses to operate all types of motor vehicles on the roadways and vehicular ways (parking lots) and ONLY where such right-of-way operations are approved by the local government." (Emphasis in the original)

In line with these comments, Mr. Krieber told the Transportation Committee (at a hearing held on February 21, 2002) that the proposed law would eliminate the driver's license requirement for off-road vehicles operated "on any area other than a highway." [6] Mr. Krieber then read the relevant statutory definition of "highway" to the Committee members: " 'Highway' means the entire width between the boundary lines of every way that is publicly maintained when a part of it is open to the public for purposes of vehicular travel, including but not limited to every street . . . [,] but not vehicular ways or areas." [7]

The members of the Transportation Committee discussed an amendment that would have substituted "roadway" for "highway", so that off-road vehicles could be operated alongside the highway—that is, on the berm or the shoulder—without a driver's license.[8] However, the final version of House Bill 397 did not include this amendment.[9]

This history shows that the legislature, when it enacted AS 28.15.021(5), intended to allow the non-licensed operation of off-highway vehicles only when those vehicles are being operated *off-highway*. This statute was not intended to eliminate the requirement of a driver's license for the operation of off-highway vehicles on public roads. Rather, it permits unlicensed drivers to operate off-highway vehicles so long as these vehicles are being operated off of a highway.

*Why we reject Stevens's argument that the enactment of AS 28.15.021(5) impliedly overturned the construction of AS 28.15.291(a) that this Court adopted in Straetz*

The ultimate issue in the present appeal is not, strictly speaking, the meaning of AS 28.15.021(5) (the statute declaring that no driver's license is required to operate an off-road vehicle unless the vehicle is being operated on a highway). Rather, the ultimate issue is whether Stevens is correct when he argues that the legislature, by enacting this statute, intended to overturn our decision in *Straetz*. We reject Stevens's argument for two reasons.

First, as we just explained in the preceding section of this opinion, Stevens is wrong about the meaning of AS 28.15.021(5). This statute does not exempt the operators of off-highway vehicles from normal licensing requirements if these vehicles are being operated on a highway.

Second, even if Stevens had been correct in his interpretation of AS 28.15.021(5), this would not demonstrate the legislature's intention to alter the result in *Straetz*.

Stevens's argument is that, if the legislature decided to allow people to operate off-highway vehicles on the highways of this

---

**6.** Minutes of the House Transportation Committee hearing on HB 397 (February 21, 2002). See also the statement of Mary Marshburn (director of the Division of Motor Vehicles) at the February 21, 2002 Transportation Committee hearing, that "once a vehicle enters the roadway, it must comply with the rules of the road. The operator can be cited for noncompliance with the rules of the road, whether licensed or not.... [Those] things would not change if the bill passes."

**7.** At that time, the definition of "highway" was found in AS 28.40.100(11). Since then, AS

28.40.100(11) has been renumbered as AS 28.40.100(12). See Revisor's Note to AS 28.40.100.

**8.** *See* Minutes of the House Transportation Committee hearing on HB 397 (February 21, 2002); *see also* Committee Substitute for House Bill 397 (offered February 25, 2002) (in the House Transportation Committee file).

**9.** SLA 2002, ch. 140, § 1.

state without a driver's license, then it necessarily follows that the legislature must have wanted to extend this privilege even to those people whose driver's licenses are suspended or revoked. This assertion is a *non sequitur*.

■ As this Court explained in *Straetz*, the legislature could—and did—rationally conclude that the offense of driving while one's license is suspended or revoked does not hinge on whether a driver's license is required for the particular motor vehicle being driven on the highway. "The prohibition [does] not hinge on the nature of the motor vehicle, but rather on [the defendant's] demonstrated danger as a driver, as evidenced by [the] license suspension [or revocation]." *Straetz*, 758 P.2d at 134–35.

For these two reasons, we conclude that the legislature's enactment of AS 28.15.021(5) does not demonstrate any intention to alter the meaning or scope of AS 28.15.291(a) as interpreted by this Court in *Straetz*.

*Stevens's argument that, if AS 28.15.291(a) prohibits drivers whose licenses are suspended or revoked from operating off-highway vehicles on the highways of this state, this statute violates the due process clause of the Alaska Constitution*

Stevens argues that even if AS 28.15.291(a) continues to mean what this Court said it meant in *Straetz*, this statute is irreconcilable with AS 28.15.021(5), and thus a driver whose license is suspended or revoked is placed in an irresolvable quandary as to which of the two statutes governs the driver's behavior. Because of this, Stevens continues, any prosecution under AS 28.15.291(a) for the act of driving an off-highway vehicle on a highway must be dismissed because the defendant is being denied due process of law.

See *Gudmundson v. State*, 822 P.2d 1328, 1333 (Alaska 1991), where the supreme court held that when one statute imposes a duty in a certain situation, and another statute imposes an irreconcilably different duty in the same situation, it violates the guarantee of due process of law to prosecute a person for failing to abide by one of the two statutes.

■ The answer to Stevens's argument is that AS 28.15.291(a) and AS 28.15.021(5) are not irreconcilable. The first statute prohibits a person whose driver's license is suspended or revoked from driving any motor vehicle on a highway. The second statute allows people to drive off-highway vehicles without a license so long as the vehicle is not being operated on a highway.

■ Stevens next argues that AS 28.15.291(a) is so ambiguous that reasonable people would not be able to tell whether a driver whose license is suspended or revoked is authorized to drive an off-highway vehicle on a highway.

The short answer to Stevens's argument is our decision in *Straetz*, where we construed the statute to prohibit this conduct.

■ The longer answer to Stevens's argument is found in our decision in *DeNardo v. State*, 819 P.2d 903 (Alaska App.1991). In *DeNardo*, we explained that a statute is not unconstitutionally vague or ambiguous merely because reasonable people might disagree about the meaning of the statute:

> [T]he fact that people can, in good faith, litigate the meaning of a statute does not necessarily (or even usually) mean that the statute is so indefinite as to be unconstitutional. The question is whether the statute's meaning is unresolvably confused or ambiguous *after* it has been subjected to legal analysis. If study of the statute's wording, examination of its legislative history, and reference to other relevant statutes and case law makes the statute's meaning clear, then the statute is constitutional.

*DeNardo*, 819 P.2d at 908 (emphasis in original).

For these reasons, we reject Stevens's assertion that AS 28.15.291(a) violates his right to due process of law.

*Stevens's argument that AS 28.15.291(a) violates the equal protection clause of the Alaska Constitution*

Stevens next argues that, if AS 28.15.291(a) prohibits a person whose driver's license is suspended or revoked from driving an off-highway vehicle on the highways of

this state, then the statute violates his right to equal protection of the law.

Stevens acknowledges that the State may have a legitimate interest in restricting the driving activities of people whose licenses are suspended or revoked, but he argues that this interest is "not ... an important one", and that it is clearly outweighed by a citizen's right to drive.

This argument is frivolous.

■ Stevens next argues that AS 28.15.291(a) draws irrational classifications between criminal and non-criminal behavior. He points out that, under AS 28.15.291(a), a person whose driver's license is suspended or revoked is prohibited from operating any motor vehicle on a highway, but the statute does not restrict the same person's right to operate a boat or aircraft, or to operate off-highway vehicles as long as the operation of these vehicles does not take place on a highway. Stevens contends that there is no rational basis for this distinction.

We disagree. As we explained earlier in this opinion, when we reviewed the legislative history of AS 28.15.021(5), the legislature decided that it made little sense to require a person to obtain a driver's license—that is, require the person to demonstrate a knowledge of the rules of the road, and to demonstrate the ability to maneuver a motor vehicle on city streets and state highways—if the person had no intention of driving a motor vehicle on city streets or state highways. The legislature concluded that the rules and practices of safe operation for boats, planes, and off-highway vehicles (when operated off of a highway) were different enough that it made little sense to require the operators of these vehicles to demonstrate the knowledge and skills needed to obtain a driver's license.

But as we explained in *Straetz*, AS 28.15.291(a) is premised on the legislature's conclusion that a person whose driver's license has been suspended or revoked should not be allowed to operate any motor vehicle on a highway—because this person presents a significant danger to other drivers and pedestrians, regardless of the type of motor vehicle that the person may be driving.

For these reasons, we conclude that it was not irrational for the legislature, when deciding how to restrict the driving activities of people whose licenses have been suspended or revoked, to distinguish between (a) the operation of motor vehicles in the air, on the water, or off-road, and (b) the operation of motor vehicles on the highway, where many more drivers, bicyclists, and pedestrians are present.

■ Finally, Stevens argues that AS 28.15.291(a) violates the equal protection clause because not all driver's license suspensions are directly traceable to behavior that indicates one's dangerousness as a driver. See, for instance, AS 28.15.161(a)(3), which requires cancellation of a person's driver's license if it is discovered that the person "failed to give ... correct information in [their license] application", and AS 28.15.181(a)(4), which requires revocation of a person's driver's license if it is discovered that the person knowingly made "a false affidavit or statement under oath to the [D]epartment [of Public Safety] relating to motor vehicles".

■ It may be true that people whose licenses have been canceled, suspended, or revoked for these or like reasons are no more dangerous to the public than any other driver. But when the legislature creates classifications and draws distinctions, these classifications and distinctions need not fit every individual case perfectly. All that is required is "a reasonable and rational attempt to achieve the statutory goal".[10]

The primary goal of AS 28.15.291(a) is to protect motorists, bicyclists, and pedestrians from dangerous drivers. The distinction codified in AS 28.15.291(a)—the distinction between people whose driver's licenses remain valid and people whose licenses have been suspended or revoked—is a reasonable and rational attempt to achieve this goal, even though some people whose licenses have been suspended or revoked may pose no greater danger than other drivers.

Moreover, Stevens is not in a position to argue that the net cast by the statute may be

---

**10.** *McCracken v. State,* 743 P.2d 382, 384 (Alaska App.1987).

too broad. Whatever might be said about the rationality of applying AS 28.15.291(a) to people whose licenses have been canceled for providing false information in their license application, or for committing perjury when transferring title to a motor vehicle, the same argument does not apply to Stevens's case. Stevens's license was revoked because he was convicted of driving under the influence—a circumstance that clearly suggests his enhanced danger to the public. Thus, even if we agreed with Stevens that AS 28.15.291(a) should not apply to all types of license cancellations, suspensions, and revocations, Stevens's license revocation would still fall within the undisputably lawful core of the statute.

For these reasons, we reject Stevens's equal protection attack on AS 28.15.291(a).

*Stevens's claim that he is entitled to an acquittal because of his "mistake of law" defense*

Stevens's final argument in this appeal is that he is entitled to an acquittal because he acted under a reasonable mistake concerning the law that governed his conduct.

■■■ Alaska recognizes a "mistake of law" defense. However, this defense is quite limited: it is available only to people who act in reasonable reliance on "a formal interpretation of the law issued by the chief enforcement officer or agency [entrusted with enforcement of that law]".[11] Thus, the mistake of law defense is not available to people who

rely (even reasonably) on a mistaken statement or interpretation of the law received from a police officer or other subordinate officer.[12] And, of course, this defense is not available to people who form their own mistaken opinion about the law.[13]

■■■ Stevens does not base this "mistake of law" claim on anything that a government official told him about the law. Rather, Stevens relies solely on his own subjective interpretation of the law—an interpretation that is premised on arguments that we addressed earlier in this opinion: Stevens's proposed interpretation of AS 28.15.021(5) (an interpretation that he apparently arrived at by himself, or with the aid of one of his attorneys), and the purported contradiction between this statute (as Stevens interpreted it) and AS 28.15.291(a).

Under these circumstances, a "mistake of law" defense is not available to Stevens.

*Conclusion*

For the reasons explained here, the interpretation of AS 28.15.291(a) that this Court announced in *Straetz* remains the law of Alaska, and the judgement of the district court is AFFIRMED.

---

11. *Morgan v. State,* 943 P.2d 1208, 1212 (Alaska App.1997), quoting *Haggren v. State,* 829 P.2d 842, 844 (Alaska App.1992).

12. *Morgan,* 943 P.2d at 1212; *Haggren,* 829 P.2d at 844.

13. *Busby v. State,* 40 P.3d 807, 816–17 (Alaska App.2002); *Morgan,* 943 P.2d at 1212–13.