Gary L. LAU, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5301.

Court of Appeals of Alaska.

June 9, 1995.

Peter F. Mysing, Kenai, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and MANNHEIMER, JJ.

### OPINION

COATS, Judge.

The district court, sitting without a jury, convicted Gary L. Lau of driving while intoxicated and fourth-degree misconduct involving weapons (possessing a firearm inside a vehicle while intoxicated), both class A misdemeanors. AS 28.35.030; AS 11.61.210(a)(1). Lau appeals, contending that District Court Magistrate Lynn H. Christensen should have suppressed the evidence of his breath-alcohol level. We agree and remand.

Just after midnight on the morning of July 28, 1993, Soldotna Police Officer Larry Davis was on patrol and saw a pick-up truck leave a parking lot and enter the highway without its headlights on. An oncoming car flashed its lights to signal that the driver of the truck should turn his headlights on, but the driver did not do so. Davis followed the truck, and when he observed the truck weaving from side to side, he turned on his video camera and recorded the truck's erratic driving, including crossing the center line of the road. Officer Davis pulled the truck over and noticed that its driver, Lau, smelled of alcohol and appeared to be intoxicated. At that point, Davis administered field sobriety tests to Lau. These observations and tests were captured on video tape and were subsequently admitted in evidence and played at trial. Davis concluded that Lau was intoxicated and arrested him. While searching Lau's truck, Davis found a revolver under the driver's seat. After being arrested, Lau was transported to the Wildwood Pretrial Facility, where he submitted to breath testing on the Intoximeter 3000; his breath-alcohol level was measured at 0.201.

Before trial, Lau moved to suppress evidence of the Intoximeter result. Lau argued that the state had interfered with his right to an independent test because another officer had dissuaded him from taking an indepen-

dent test after Lau had already told Officer Davis that he wanted to have a blood test performed. At an evidentiary hearing on the motion to suppress, Davis testified that, after he had read aloud the "Notice of Right to Independent Test" form, Lau had indicated on the form that he chose to have blood drawn for a test at his own expense. Officer Davis testified that Sergeant James Wood, a uniformed corrections officer, was also present at the pretrial facility to observe Lau, who was being argumentative and potentially combative. Davis then escorted Lau to the booking area, where Lau could make telephone calls and arrangements for an independent test, and left him there with Wood while Davis completed paperwork in another part of the room. When Davis returned, Lau stated that he preferred instead to have a blood test at the state's expense; Davis therefore arranged to summon a nurse to draw Lau's blood. Davis again left Lau essentially alone with Wood and resumed his paperwork for the minute or so that it took the nurse to arrive. But when the nurse arrived, Lau changed his mind again, telling Davis that he did not want a blood test. Davis testified that he had not observed anyone do anything that would have interfered with Lau's opportunity to obtain a blood test, especially after the nurse was present and the necessary equipment was ready to draw blood.

Sergeant Wood testified at the hearing that he was acquainted with Lau and had bowled with him for three years. Wood recalled that when Davis had left him alone with Lau in the booking area, Lau had kept asking whether he should undergo an inde-

pendent blood test and that Wood had told him that the state could use the results of a blood test, which were more accurate than the results of a breath test, against him. However, Wood denied encouraging or discouraging a blood test. Wood testified that he believed that Lau had been asking him for advice in the capacity of a friend and not as a uniformed officer. On cross-examination, Wood conceded that Lau had later telephoned Wood at work and thanked Wood for being a friend and helping Lau when Lau had been arrested. Wood then listened to a tape recording that Lau had made of that telephone conversation and acknowledged that it was accurate. On the tape, Wood accepted Lau's thanks for telling him not to take the blood test with the comment "what are friends for" and remarked that a blood test "would have killed you," telling Lau, "you can't beat it." [1]

Lau testified that he had wanted to take a blood test when Davis had read him the notice of his right to an independent test but that Wood had shaken his head, mouthed the word "no," and made a hand gesture behind Davis' back while all three were still in the Intoximeter room. Lau was confused by this behavior and continued to state he wanted an independent test, but when Wood and Lau got the opportunity to converse while Davis was away, Wood told Lau that the blood test would "nail you." When the nurse arrived and was ready to draw blood, Wood again shook his head and made a hand gesture; at that time, Lau was convinced he should not have a blood test and announced he no longer wanted one. Lau testified that he would

1. The pertinent portion of the recorded telephone conversation was as follows:

LAU: Hey, you know, I wanted to thank you for all the things you did.
WOOD: Oh, okay.
LAU: And hey, especially not, telling me not to take that blood test.
WOOD: Oh, you bet. You know, what are friends for?
LAU: Because, well, that thing might have hurt me.
WOOD: Oh, that would have killed you, man.
LAU: It would?
WOOD: I'm telling you.
LAU: Yeah, well, I'm glad you were there to help me and tell me not, not to do it.

WOOD: I've seen too many of them that think they're being smart but they're, and it will bite them in the ass.
LAU: What's that? To have a blood test. It'll give them a higher reading?
WOOD: Well, a higher reading, and you can't beat it.
LAU: You can't beat it, huh?
WOOD: And whatever results you get back, cops will get a copy of it and use it against you in court.
LAU: Yeah. Okay, well, I appreciate it.
WOOD: You know, you can beat the other shit, but you can't beat that.
LAU: Yeah. Yeah. Well, I appreciate you telling me not to do it.
WOOD: No problem with that.

have taken the blood test had it not been for Wood's actions.

Although Magistrate Christensen found that Wood had directly discouraged Lau from taking an independent blood test, he denied Lau's motion to suppress. Magistrate Christensen recognized that if the police dissuade a driver from taking an independent test, that conduct might amount to impermissible interference with the driver's right to have an independent test. Nevertheless, the magistrate found that Wood had been acting as Lau's friend and not in any capacity as an agent for the police or the state. The magistrate concluded that Lau's breath test result should not be suppressed because the state and the police had acted properly and had not authorized or known about Wood's advice to Lau.

■■■ A driver who has been arrested for driving while intoxicated has the right to an independent chemical test to check the accuracy of the police-administered breath test. If the state interferes with the driver's right to an independent test, the result of the breath test must be suppressed. *Ward v. State*, 758 P.2d 87, 89–91 (Alaska 1988). The question of whether the state actively interfered with the right to an independent test is a factual one of whether, under the totality of the circumstances, state conduct prevented the driver from obtaining an independent test that the driver would otherwise have obtained. *Gundersen v. Municipality of Anchorage*, 762 P.2d 104, 108–10 (Alaska App. 1988), *reh'g denied*, 769 P.2d 436, 439–40 (Alaska App.1989), *aff'd on other grounds*, 792 P.2d 673 (Alaska 1990).

■■ In this case, Magistrate Christensen found that Wood had actively talked Lau out of taking the independent breath test that Lau had earlier decided to take. This finding is not clearly erroneous. In *People v. Underwood*, 396 N.W.2d 443 (Mich.App. 1986), arresting officers talked the defendant out of the blood test he had demanded by telling him that a blood test was silly and stupid, would show a higher alcohol level than the breath test had, and would not prevent the defendant from going to jail. Based on these facts, the court in *Underwood* concluded that the police had deprived the

defendant of an opportunity to obtain an independent test. *Id.* at 444.

Magistrate Christensen also found that Wood was not acting in the capacity of a police officer but instead as a friend. The magistrate specifically found that Davis, the arresting officer, had properly informed Lau of his right to an independent test and had neither actively interfered with Lau's right to decide nor known of Wood's advice that Lau refuse the blood test. Magistrate Christensen concluded that applying an exclusionary rule because of Wood's conduct in this case would not be appropriate because the state's police and prosecutorial agencies had engaged in no misconduct that warranted deterrence. The magistrate apparently relied on the fact that Wood had no "enforcement or prosecutorial responsibilities."

■■ On these facts, we conclude that Wood's conduct must be attributed to the state. Wood was an on-duty, uniformed corrections officer guarding Lau as part of his duties at the pre-trial facility. While Lau was in Wood's sole custody, Wood actively dissuaded Lau from seeking a blood test. This conduct cannot be distinguished on the ground that Wood was a corrections officer rather than a police officer. Whether an arresting police officer or a jail guard, a government officer having custody of an arrested driver cannot attempt to dissuade the driver from exercising the right to an independent blood test. *See Underwood*, 396 N.W.2d at 444.

■ Even if Wood acted in good faith— that is, even if Wood was subjectively motivated by friendship for Lau and by his belief that Lau's interests would be best served if Lau declined a blood test—the fact remains that Wood dissuaded Lau from exercising his rights. Wood was in a position to do this solely because he was a government officer having custody of Lau; thus, his actions must be attributed to the state.

■ We further conclude that suppressing Lau's breath test result is the proper remedy for Wood's conduct. In *Ward*, the supreme court held that exclusion of evidence was the appropriate remedy for state interference with the right to an independent test both to

deter "future illegal police conduct" and to protect the "particular[ly] importan[t]" right of a defendant driver to challenge the result of the police-administered breath test. 758 P.2d at 90–91 (citations omitted). In the context of searches and seizures, this court has held that the exclusionary rule and its "police deterrence" rationale apply to the on-duty actions of state agents and employees even when their specific functions are not directly related to the enforcement of the law. *Lowry v. State,* 707 P.2d 280, 286–87 (Alaska App.1985). In *Lowry,* a private security guard hired by the coroner's office to watch the defendant's house took a book from the defendant's closet, opened it, and found handwritten notes that incriminated the defendant. 707 P.2d at 282–83. This court quoted *New Jersey v. T.L.O.,* 469 U.S. 325, 335, 105 S.Ct. 733, 739, 83 L.Ed.2d 720 (1985), in which the United States Supreme Court stated that the Fourth Amendment restrained "governmental action" generally and not merely "operations conducted by the police." *Lowry,* 707 P.2d at 285–86. This court concluded that exclusion of the hand-written notes was the appropriate remedy:

> [The guard] clearly either knew or should have known that his authority to be present in the Lowry residence derived from a state agency, the Coroner's Office, and was limited in scope. The impermissible nature of [the guard]'s conduct cannot be characterized as merely technical; nor is this the type of non-deterrable conduct

that plainly falls outside the purposes of the exclusionary rule.

*Id.* at 287.

■ In this case, the deterrent policy of the exclusionary rule similarly applies to the conduct of state corrections officers guarding arrested drivers. In addition, Lau's ability to present a defense at trial was diminished by the denial of a chance to directly attack the accuracy of the breath test result. *See Ward,* 758 P.2d at 91. The breath test result should therefore have been suppressed.[2]

■ The state argues that any error in admitting the breath test result was harmless. However, Magistrate Christensen was the sole factfinder in a non-jury court trial. The trial court is in a better position than this court to reconsider the trial evidence and determine whether that evidence, absent the suppressed breath test result, proves Lau's guilt beyond a reasonable doubt. We therefore remand to the district court for its further consideration. We do not retain jurisdiction of this case.

We REMAND.

___

2. Given our holding, we need not address Lau's alternate argument for suppressing his breath test result.