William A. **HERNANDEZ**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–7366.

Court of Appeals of Alaska.

July 20, 2001.

---

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

William A. Hernandez appeals his conviction for driving while intoxicated. He claims that the police deterred him from exercising his right to obtain an independent blood test, by leading him to believe that the result of the blood test would not be admissible in court. Hernandez argues that, because the police deterred him from seeking an independent blood test, the superior court should have suppressed the result of Hernandez's breath test.

Superior Court Judge *pro tem* Mark I. Wood found that the officer who arrested Hernandez did, through his conduct, lead Hernandez to believe that the blood test result would not be admissible. However, Judge Wood did not expressly state whether Hernandez's interpretation of the officer's conduct was reasonable under the circumstances. Because we conclude that the reasonableness of Hernandez's belief is the factor that determines whether he is entitled to suppression of the breath test result, we remand this case to the superior court for a finding on this issue.

*Underlying facts and the contentions of the parties*

In the early morning of December 24, 1998, Hernandez was arrested in Fairbanks for driving while intoxicated. After Hernandez submitted to a breath test, he chose to exercise his right to obtain an independent blood test at his own expense.

The arresting officer, Jonathan Terland, informed Hernandez that, because it was the middle of the night, Fairbanks Memorial Hospital was the only facility available to perform the blood test. Terland told Her-

nandez that he would take him to the hospital, but Hernandez would have to make arrangements for someone to meet them at the hospital and bring money to pay the testing fee. Hernandez called his fiancée and asked her to bring $500 to Fairbanks Memorial Hospital to pay for the test. Terland then transported Hernandez to the hospital.

At the hospital, the receptionist told Hernandez and his fiancée that, although hospital staff would perform the blood test, the result of the test would not be admissible in court. When Hernandez asked why the test result would not be admissible, the receptionist replied that the hospital did not follow all of the court rules that governed blood evidence. For example, she said, the hospital did not maintain sufficient records to establish the "chain of custody" of the blood sample.

The receptionist did not know what she was talking about, but Hernandez and his fiancée did not know this. Understandably surprised and upset that they were being asked to spend $500 for a test of dubious value, Hernandez and his fiancée turned to Officer Terland for his response to the receptionist's statements. Terland gave them a confused look and shrugged his shoulders. Hernandez and his fiancée interpreted the officer's actions as confirmation of the receptionist's statements.

At this point, Hernandez told Terland that he might as well take him back to the station. Terland did so.

Hernandez contends that, because of this series of events, he was effectively denied his right to an independent blood test, and so his breath test result should have been suppressed. The State admits that the hospital receptionist's advice was completely wrong, but the State argues that the receptionist's misinformation should not be attributed to Officer Terland. The State notes that the hospital receptionist was an agent of the hospital, not an agent of the government.

The State contends that because the receptionist did all the talking, Hernandez can not properly claim that he was misled by government agents about the legal consequences of having the blood test performed at the hospital. The State further contends that Terland was not obligated to correct the misinformation imparted by the receptionist, since she was not a government agent.

*Should the State be held accountable for Hernandez's erroneous belief concerning the admissibility of the blood test result?*

 Under the due process clause of the Alaska Constitution, a person arrested for driving while intoxicated is entitled to police assistance in obtaining an independent test to ascertain the level of alcohol in the arrestee's blood.[1] If the State interferes with an arrestee's right to an independent blood test, the arrestee is entitled to suppression of their breath test result.[2]

We have previously ruled that "interference" is not limited to physical obstruction of the test, but can also occur when the police verbally dissuade the arrestee from seeking the test. In *Lau v. State*[3], a corrections officer who was a friend of Lau's advised him not to ask for a blood test; the officer warned Lau that the test result would "nail [him]".[4] Based on this advice, Lau chose not to seek a blood test. We ruled that even if the officer honestly believed "that Lau's interests would be best served if he declined a blood test[,] the fact remain[ed] that [the officer] dissuaded Lau from exercising his rights."[5] We further ruled that the State should be held accountable for the results of the officer's advice; we noted that "[the officer] was in a position [to dissuade Lau from taking the test] solely because he was a government officer having custody of Lau".[6]

Turning to the facts of Hernandez's case, it is undisputed that Hernandez was dissuaded

---

1. See *Snyder v. State*, 930 P.2d 1274, 1277 (Alaska 1996); *Gundersen v. Anchorage*, 792 P.2d 673, 675–76 (Alaska 1990).

2. See *Ward v. State*, 758 P.2d 87, 89–91 (Alaska 1988); *Lau v. State*, 896 P.2d 825, 828 (Alaska App.1995).

3. 896 P.2d 825 (Alaska App.1995).

4. *Id.* at 827.

5. *Id.* at 828.

6. *Id.*

from seeking an independent blood test because of the false information he received (that the blood test result would not be admissible in court). The question is whether the State should be held responsible for this false information.

The State relies on the doctrine that the government is not responsible for the consequences of a defendant's misimpression or lack of understanding unless that misimpression or lack of understanding arises from the conduct of government agents.[7] According to the State, the hospital receptionist was the sole source of the bad information that Hernandez relied on. Thus, the State argues, even though Hernandez's decision to forgo the blood test may have been unfortunate, that decision can not be laid at the State's doorstep.

The State's argument overlooks the fact that Officer Terland convinced Hernandez to go to the hospital for the blood test by telling Hernandez that the hospital was the only available facility for performing the test. Because Terland told Hernandez that the hospital was the only place where Hernandez could exercise his right to an independent test, one might reasonably conclude that Terland had an obligation to clarify matters when the hospital receptionist told Hernandez that the hospital could not or would not perform the test he needed (*i.e.*, could not or would not perform the test in a manner that would allow the test result to be admitted as evidence in a court proceeding).

More importantly, the State's argument that Terland did nothing to confirm or ratify the receptionist's statements is seemingly inconsistent with the superior court's findings of fact. Superior Court Judge *pro tem* Mark I. Wood found that, when Terland shrugged his shoulders and made a face, both Hernandez and his fiancée "took the officer's nonverbal response as an affirmation of what the receptionist said."

True, Officer Terland testified that, when he engaged in this conduct, he did not subjectively intend to confirm the receptionist's statements. He told the court that he was surprised by the receptionist's statements,

and he did not know for sure whether her advice was right or wrong. For this reason, Terland declared, he did not purposely do anything to demonstrate either agreement or disagreement with the receptionist's statements.

But although Terland may not have subjectively intended to confirm the receptionist's false information, Judge Wood nevertheless concluded that the officer's gesture was "ambiguous". By labeling the officer's conduct "ambiguous", Judge Wood appears to have found that Hernandez (and other reasonable persons in his position) could reasonably have interpreted the officer's conduct as a confirmation of the receptionist's statements.

As we held in *Lau*, the officer's good faith is not determinative of whether the officer's conduct violated Hernandez's right to due process. Hernandez interpreted the officer's conduct as a confirmation that the blood test result would not be admissible. If Hernandez acted reasonably in reaching this interpretation, then the State should be held accountable for the consequences of the officer's conduct—accountable for the fact that the officer's conduct was a substantial factor in dissuading Hernandez from pursuing his right to an independent blood test.

If, on the other hand, Hernandez's interpretation of the officer's conduct was unreasonable, then we would be left to resolve a more difficult issue: whether, under the circumstances of this case, Officer Terland was under an affirmative duty to rebut or at least question the receptionist's statements.

Because this issue is more difficult, and because we would not need to resolve this issue if Hernandez's interpretation of the officer's conduct was reasonable, we conclude that we should remand Hernandez's case to the superior court. As we explained above, Judge Wood labeled Terland's conduct "ambiguous"; it thus appears that Judge Wood may have already found that Hernandez acted reasonably when he interpreted Terland's conduct as a confirmation of the receptionist's statements. But Judge Wood did not focus on this issue as potentially determina-

---

7. *See Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986).

tive of the litigation, so we believe that the prudent course lies in remanding this case to him for an express finding on this question.

Judge Wood should determine whether, under the totality of the circumstances, Hernandez's interpretation of Terland's conduct was reasonable. Judge Wood is authorized, but is not obliged, to receive additional evidence on this issue. The judge shall transmit his finding(s) to this court within sixty days of the issuance of this opinion. We will then renew our consideration of Hernandez's appeal.

*Conclusion*

This case is REMANDED to the superior court to determine whether Hernandez's interpretation of Terland's conduct was reasonable.

We retain jurisdiction of this case.