Frank J. OLSON, Petitioner,

v.

**STATE of Alaska, Respondent.**

No. S–13595.

Supreme Court of Alaska.

Sept. 23, 2011.

---

Julia D. Moudy, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner.

Kenneth M. Rosenstein, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Frank Olson was arrested in Anchorage for driving while intoxicated. At the police station he refused to submit to a breath test. An officer advised him of the consequences for refusing to take the test using an implied consent form, but the form contained information that was out of date; it stated that refusal was a felony if the arrestee had been convicted of DWI or refusal twice within the previous *five* years. In fact, refusal was a felony if the arrestee had been twice convicted within the previous *ten* years. Olson had several prior DWI convictions, one of which was approximately three weeks

outside the five-year window, but well within the ten-year window. Olson persisted in his refusal and was convicted of the class C felony, refusal to submit to chemical test. He appealed, claiming the erroneous warning violated his due process rights. Olson's conviction was affirmed, but we granted his petition for hearing. Because we now hold that Olson bears the burden of proving prejudice from the erroneous information, we remand to give him an opportunity to make this showing.

## II. FACTS AND PROCEEDINGS

The facts of this case are undisputed. On June 12, 2002, the police responded to a report of a car stopped in the roadway with a person slumped over the steering wheel. They found Frank Olson in the driver's seat with the engine running and the transmission in "drive." After waking Olson, the officers observed that he would not make eye contact, would not answer any questions, was unsteady on his feet, and smelled of alcohol. They tried to administer the standardized field sobriety horizontal gaze nystagmus test (following the officer's finger from right to left), but Olson either would not or could not follow the instructions. The officers arrested Olson for driving while intoxicated.

There is no dispute that Olson refused to provide a breath sample at the police station and that our case law required the police to inform him of the consequences of his refusal.[1] The arresting officer attempted to do so by reading Olson the implied consent form the station was using at that time. Although there is no allegation that the police officer in this case had any improper motive, it is uncontested that he gave an incorrect warning. Using an out-of-date, pre-printed form, the officer advised Olson that: "Refusal to submit to a chemical test can be either a class A misdemeanor or a class C felony. If you have been twice convicted of either driving while intoxicated or refusal to take a chemical test in the *last five years*, the penalty for refusing to take the test is a class C felony." (Emphasis added).

---

1. *See, e.g., Copelin v. State,* 659 P.2d 1206, 1212 n. 15 (Alaska 1983) (citing *Wirz v. State,* 577 P.2d 227, 230 (Alaska 1978)).

Olson had several prior convictions for DWI, including four convictions for DWI in Alaska since 1992. The two most recent of these convictions occurred after the effective date for the statutory amendment that created the ten-year look back period. One of the prior convictions—from May 19, 1997—was three weeks too old to be considered in a five-year look back period but fit easily inside a ten-year look back period.

Olson was indicted for the class C felony refusal to submit to chemical test, he was convicted, and the court of appeals affirmed his conviction.

## III. STANDARD OF REVIEW

 Whether a due process violation occurred is a question of law, which we review de novo.[2] We will adopt the rule of law that is "most persuasive in light of precedent, reason, and policy."[3]

## IV. DISCUSSION

The issue we must decide is whether Olson's due process rights were violated by the improper warning regarding the consequences of refusal. This requires that we consider whether a reasonable person would regard it as a "fundamentally unfair use of government power" for the police to give a warning that understates the consequences of refusal, and then, after an arrestee refuses to submit to chemical testing, indict the arrestee for the greater penalty.[4]

2. See S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs., 61 P.3d 6, 10 (Alaska 2002); Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles, 20 P.3d 1130, 1134 (Alaska 2001).

3. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. Municipality of Anchorage v. Ray, 854 P.2d 740, 748 (Alaska App.1993) ("The due process guarantee protects citizens from the arbitrary or fundamentally unfair use of government power ...."); cf. Nichols v. State, 425 P.2d 247, 256 (Alaska 1967) (Rabinowitz, J., concurring) (describing the failure to appoint counsel once a sentencing court has determined that a hearing is required to resolve factual issues as "fundamentally unfair").

5. AS 28.35.031(a). This statute applies if the person has been "lawfully arrested for an offense

Under Alaska's implied consent law, AS 28.35.031, a person who drives or operates a motor vehicle in Alaska is considered to have given implied consent to a breath test.[5] If the motorist refuses the breath test, AS 28.35.032 provides that the officer must warn the person: (1) that refusal will result in the denial or revocation of the person's driver's license; (2) that refusal may be used against the person in a civil or criminal action or proceeding arising out of the incident; and (3) that refusal is a "crime." If the person still refuses, no chemical test may be given.[6]

Alaska Statute 28.35.032 also outlines the penalties for refusal. Section (f) states that refusal is ordinarily a misdemeanor. But section (p) adds that:

A person is guilty of a class C felony if the person is convicted under this section and ... has been previously convicted two or more times since January 1, 1996, and within the 10 years preceding the date of the present offense.

The statute's ten-year look back period was the result of a July 2001 statutory amendment.[7] Before the amendment, the statute provided for a five-year look back window.[8]

 Olson argues that the police violated his due process rights by giving him inaccurate information about the look back period. Olson does not allege bad faith by the officer,[9] but he contends the erroneous information hindered his ability to make a "knowing and intelligent decision to refuse to submit to a chemical test."[10] The State argues that

arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle." Id. There is no dispute the police had probable cause to arrest Olson.

6. AS 28.35.032(a). There are some exceptions, but none of them are relevant here.

7. Ch. 63, § 13, SLA 2001.

8. See former AS 28.35.032(p) (2000).

9. See Hernandez v. State, 28 P.3d 315, 318 (Alaska App.2001) ("[An] officer's good faith is not determinative of whether the officer's conduct violated [the defendant's] right to due process.").

10. The court of appeals characterized Olson's argument as: "[T]he police must inform the arrestee whether refusal will be a misdemeanor or

the warning is not an element it must prove in order to establish unlawful refusal, that it was only obligated to inform Olson that refusal is a "crime," and that it met this duty. The State also responds that Olson's "knowing and intelligent" argument is misplaced because this standard traditionally applies where a right exists, and Alaska courts have repeatedly stated that there is no constitutional, statutory, or implied right to refuse to take a breath test.[11] In Alaska, arrestees have the power to refuse, meaning the police may not administer the test if a person continues to refuse after being informed that refusal is a crime.[12]

We find the State's first argument unpersuasive because the incorrect information given to Olson raises due process concerns even if the State met its burden of informing Olson that refusal is a crime, and even if the State can prove the elements of refusal. We find the State's second argument unpersuasive for two reasons: (1) we define "power to refuse" in the same way other jurisdictions loosely use the term "right to refuse"; and (2) the validity of the decision to refuse is called into question when the decision is premised upon misinformation.

### A. The Incorrect Information Given To Olson Raises A Due Process Issue.

The State and the court of appeals rely heavily on earlier holdings that "the warn-

ings required by [the implied consent statute] ... are not elements of the offense."[13] As the State phrases it, "[t]he police satisfied the foundation requirement of [the implied consent statute] by informing Olson that his refusal would constitute a misdemeanor. Even though this was inaccurate as to the class of offense, it still unmistakably conveyed to Olson[ ] that refusal would be a crime. And that is all [the statute] requires." We agree the police satisfied the statutory duty to inform Olson that refusal is a crime, and we agree the State proved the elements of refusal, but this is insufficient to answer the question whether Olson's due process rights were violated when he was given an incorrect warning.[14]

### B. The Distinction Between A "Right" And A "Power" Is Not Relevant To This Case.

We have stated that there is "no right [to refuse a breath test] in the statutory sense, *in that the arrestee will suffer adverse legal consequences.*"[15] We have avoided labeling refusal as a "right" because penalties may arise for choosing to refuse a breath test. But this distinction is largely one of semantics; other states recognize a "right" to refuse a breath test and assess legal consequences for exercising that right.[16] The

---

a felony." But Olson's brief on appeal argued that "the warnings were inadequate to ensure that [he] understood the consequences of his refusal" because "there is a substantial difference between informing a person that the crime is a misdemeanor as opposed to a felony." We interpret Olson's argument in the court of appeals to be the same argument he makes to our court: he does not argue that the police have a duty to inform an arrestee of the class of penalty for refusing; he argues that if they choose to do so, the information they provide must be accurate.

11. *See, e.g., Copelin v. State,* 659 P.2d 1206, 1212 (Alaska 1983) (holding that arrestees may have no *right* to refuse, but do have a power to refuse); *Graham v. State,* 633 P.2d 211, 214 (Alaska 1981) ("Under Alaska law ... one arrested for operating a motor vehicle while under the influence of intoxicating liquor has no constitutional or statutory right to refuse to submit to a breathalyzer test.") (internal citations omitted); *Wirz v. State,* 577 P.2d 227, 230 (Alaska 1978) (refusing to recognize a statutory or implied right to refuse).

12. *Copelin,* 659 P.2d at 1212 (citing *Anchorage v. Geber,* 592 P.2d 1187 (Alaska 1979)). *See also* AS 28.35.032(a).

13. *Brown v. State,* 739 P.2d 182, 185 (Alaska App.1987) (citing *Svedlund v. Anchorage,* 671 P.2d 378, 385 (Alaska App.1983)).

14. *See, e.g., State v. Wilson,* 92 Hawai'i 45, 987 P.2d 268, 273 (1999) (collecting cases).

15. *Copelin,* 659 P.2d at 1212 (emphasis added) (citing AS 28.35.032).

16. *See, e.g., Wilson,* 987 P.2d at 272 (recognizing both an implied right to refuse and penalties for refusing); *State v. Cormier,* 127 N.H. 253, 499 A.2d 986, 989 (1985) ("The defendant's refusal is ... the exercise of a legal *right* provided by the legislature.... Thus a DWI defendant has a legal *power* to refuse to provide a sample that the State could constitutionally demand." (emphasis added)).

distinction drawn by the State between a "right" and a "power" in the context of refusing to submit to a breath test is not material to the outcome of this case.

### C. The Police Voluntarily Gave Olson Additional Information Beyond That Required By AS 28.35.032.

Our case law clearly establishes that the decision to refuse a breath test requires careful consideration. *Copelin v. State* provides a good example.[17] In *Copelin*, two arrestees asked to contact their attorneys before submitting to the breath test.[18] Their requests were denied, and the arrestees were subsequently convicted of operating motor vehicles while intoxicated.[19] After granting their petitions for hearing, we observed: "The police are not required to inform the arrestee that he has the right to refuse; however, if he does refuse, he must be advised of the consequences flowing from his refusal and be permitted to reconsider his refusal in light of that information."[20]

■ Alaska Statute 28.35.032 requires police to inform arrestees that, among other things, refusal is a "crime." The police had no obligation to inform Olson that, due to his prior record, a conviction for refusal would be a felony, but the police went beyond the statutory minimum and gave Olson additional information about the actual penalties that could be imposed in his case. Alaska case law encourages the police to provide additional information beyond the statutory minimum,[21] but due process concerns can arise if the information understates the consequences of the offense. Misinformation can impair an arrestee's ability to make an informed decision about potential "consequences flowing from his refusal,"[22] and may actually discourage the arrestee from taking the test.[23] "The decision ... whether to comply with an arresting officer's request to take a sobriety test is not a simple one,"[24] and we have said it should not be based on an ignorance of the actual consequences of refusing.[25] Here, the implied consent form understated the penalties for Olson's refusal. We conclude it would be fundamentally unfair to allow the State to assert one penalty, on which the arrestee's decision relies, and then later convict him of a charge that carries a greater penalty.[26]

### D. Olson Bears The Burden Of Proving Prejudice From The Officer's Extraneous And Erroneous Warning.

■ The State concedes that "if misinformation supplied by the police reasonably induced an arrestee to refuse the test, then the evidence of the refusal should be suppressed." But the State argues that "[m]isinformation provided by the police is not actionable unless it induced a [DWI] arrestee into refusing to submit to the chemical test." The court of appeals agreed with this argument, concluding: "Olson never offered to prove that he indeed relied to his detriment on the erroneous information about a five-year 'look back' for prior convictions when he

17. 659 P.2d 1206.

18. *Id.* at 1209.

19. *Id.* at 1208–09.

20. *Id.* at 1212 n. 15 (citing *Wirz v. State,* 577 P.2d 227, 230 (Alaska 1978)).

21. *Svedlund v. Municipality of Anchorage,* 671 P.2d 378, 385 n. 9 (Alaska App.1983).

22. *Copelin,* 659 P.2d at 1212 n. 15 (citing *Wirz,* 577 P.2d at 230).

23. *See Svedlund,* 671 P.2d at 385 n. 9 ("Adequate warnings serve ... the obvious legislative goal of encouraging those accused of drunk driving to take the test.").

24. *Copelin,* 659 P.2d at 1213.

25. *See Svedlund,* 671 P.2d at 385 n. 9 ("Adequate warnings serve to insure that a refusal will not be based on ignorance....").

26. Numerous other jurisdictions agree that an officer's misstatements about the consequences of refusing can violate due process. *See, e.g., State v. Peirce,* 257 Ga.App. 623, 571 S.E.2d 826 (2002); *State v. Wilson,* 92 Hawai'i 45, 987 P.2d 268 (1999); *Meigs v. Kan. Dep't of Revenue,* 251 Kan. 677, 840 P.2d 448 (1992); *Forman v. Motor Vehicle Admin.,* 332 Md. 201, 630 A.2d 753 (1993); *McDonnell v. Comm'r of Pub. Safety,* 473 N.W.2d 848 (Minn.1991); *Teson v. Dir. of Revenue, State of Mo.,* 937 S.W.2d 195 (1996); *State v. Koch,* 126 Wash.App. 589, 103 P.3d 1280 (2005). The State cites to no jurisdictions that hold otherwise.

made his decision to refuse the breath test." But Olson counters that, contrary to the court of appeals' decision, "[t]here should be no requirement that [he] 'prove' he would have done something differently."

The State primarily relies on *Hernandez v. State*[27] and *Graham v. State*[28] to support its argument that Olson must show that he was prejudiced by the incorrect statement of the penalty for refusal, but these cases are not dispositive. *Hernandez* concerned an arrestee's right to obtain an independent blood test.[29] After Hernandez submitted to the request that he take a breath test, he exercised his right to obtain an independent blood test.[30] The arresting officer informed Hernandez that Fairbanks Memorial Hospital was the only facility available to perform the test because it was late at night.[31] At the hospital, a receptionist stated—incorrectly—that the hospital's test was inadmissible in court.[32] Hearing the receptionist's statement, Hernandez looked to the arresting officer for clarification, but the officer only shrugged his shoulders.[33] Hernandez interpreted the officer's response as an affirmation of the receptionist's statement.[34] He waived his right to the blood test and he was convicted of DWI.[35] The superior court found that Hernandez was in fact dissuaded from seeking the independent test—and thus prejudiced—by the false information he received and by the officer's subsequent conduct.[36] The issue on appeal was whether Hernandez's reliance on the arresting officer's response was reasonable. The court of appeals held that if Hernandez reasonably relied on the officer's conduct, "the State should be held accountable ... for the fact that the officer's conduct was a substantial factor in dissuading Hernandez from pursuing his right to an independent blood test."[37]

The arrestee in *Graham* refused the breath test after being read her *Miranda* rights.[38] She claimed that the officer's *Miranda* warning[39] that she had the "right to remain silent" and that "anything said may be used against [her]" confused her about the "right" to refuse to take the test or answer questions about whether she was refusing to do so.[40] Given the circumstances in *Graham*, we held:

> [W]here an arrested person refuses to submit to a breathalyzer test, the administering officer must inquire into the nature of the refusal and, if it appears that the refusal is based on a confusion about a person's rights, the officer must clearly advise that person that the rights contained in the *Miranda* warning do not apply to the breathalyzer examination.[41]

But we also explained that "[t]he defendant motorist ... has the burden of showing that he or she was in fact confused" by the officer's statements.[42]

*Hernandez* and *Graham* were cases where arrestees claimed to be subjectively confused by the officer's statements or conduct. Viewing the facts of those cases objectively, the court concluded that some people may have been confused by the circumstances whereas others would not. Under those circumstances, we required the defendants to show that they were actually confused by the officer's statement or conduct. Olson's case is different. There is no reason to suspect

**27.** 28 P.3d 315 (Alaska App.2001).

**28.** 633 P.2d 211 (Alaska 1981).

**29.** *Hernandez,* 28 P.3d at 316–17.

**30.** *Id.*

**31.** *Id.*

**32.** *Id.* at 317.

**33.** *Id.*

**34.** *Id.*

**35.** *Id.* at 316–17.

**36.** *Id.* at 316, 317–18.

**37.** *Id.* at 317.

**38.** *Graham v. State,* 633 P.2d 211, 212 (Alaska 1981).

**39.** *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**40.** *Graham,* 633 P.2d at 213–14.

**41.** *Id.* at 215.

**42.** *Id.* (citing *State v. Severino,* 56 Haw. 378, 537 P.2d 1187, 1190 (1975)).

he was confused by the misinformation about penalties for refusal. The meaning of the officer's warning was not ambiguous or unclear; it was simply incorrect. As Olson points out, "[t]here is no dispute that [he] was provided with incorrect information that would have misled anyone." We agree that the pre-printed form provided an objectively clear—albeit wrong—statement that would have prevented a reasonable person who had prior DWI convictions within the ten-year look back period from making a knowing and intelligent decision about refusal. The *Hernandez* and *Graham* requirement for showing subjective confusion does not apply here; Olson was objectively misinformed.

Even though the cases regarding subjective confusion do not control in this case, we still must determine who bears the burden of proving prejudice when an arrestee is objectively misinformed by the police. Olson argues that he should not have the burden of proving that he would have done something differently because he was squarely within the class of defendants who would reasonably be misled by the misinformation: he had two DWI convictions within the preceding ten, but not five, years, and the implied consent form erroneously informed him that refusal was a misdemeanor, not a felony, for a person with this history. The State responds that Olson "is claiming that the misinformation negated his refusal," but Olson "should be required to plead and prove those facts that entitle him to relief." The State points to two policy reasons to support its position: (1) if Olson does not have to prove prejudice, he "would receive a substantial windfall [even though] the misinformation he received played no role in his decision to refuse to submit to the chemical test"; and (2) "proof of Olson's motivation for refusing to submit is singularly available to him."

We have never directly addressed this issue before, but other jurisdictions that have considered it require arrestees to show a causal connection between an officer's extraneous and erroneous statement and the arrestee's decision to submit to testing.[43] In *Cuthbertson v. Kansas Department of Revenue*, the holder of a commercial driver's license was arrested on suspicion of DUI while driving a noncommercial vehicle.[44] The arrestee "received all the statutory notices required by law," which covered only the effect that refusing or failing the test would have on the arrestee's noncommercial license.[45] The officer in *Cuthbertson* was not required to inform the arrestee of the potential penalties associated with his commercial license, but the officer did so anyway.[46] Unfortunately, the extraneous information the officer provided was incorrect.[47] The arrestee argued that his driving privileges should be fully reinstated because he was incorrectly advised about the effect failing the test would have on his commercial license. The Kansas Court of Appeals disagreed. It explained:

> [The officer] was not required to provide any information to Cuthbertson regarding the collateral damage to his [commercial driver's license].... However, once [the officer] dove into the pool of gratuitous information, his responses are required to be correct statements of the law. Even in this situation, however, we revert to the fact that we are not dealing with statutorily mandated notices. The consequence is that Cuthbertson must demonstrate preju-

---

43. We do not reach the question whether an arrestee must show prejudice if the officer's misstatement concerns a statutorily-required warning, as opposed to extraneous information. *See Gonzales v. State Dep't of Licensing*, 112 Wash.2d 890, 774 P.2d 1187, 1192–93 (1989) (explaining that a showing of prejudice is not required for criminal cases when the misinformation concerns a statutorily-required warning, but that a showing of prejudice is required for civil matters when the misinformation concerns not-required information).

44. 42 Kan.App.2d 1049, 220 P.3d 379, 380 (2009).

45. *Id.* at 383.

46. *Id.* at 381.

47. *Id.* Specifically, the officer informed Cuthbertson that the penalties were the same for his commercial license as for his regular license: a suspension of two years for refusing the test and a suspension of one year for failing. *Id.* In fact, Cuthbertson's commercial license would have been suspended for life regardless of whether he failed or refused the test. *Id.*

dice, which he cannot, in order to show reversible error.[48]

Olson was correctly informed of the statutorily-required warning, i.e., that refusing the breath test was a crime. It was only in regard to the supplemental piece of information—the length of the look back period used to determine whether refusal constituted a misdemeanor or a felony—that incorrect information was provided. We join those jurisdictions holding that under these circumstances the arrestee must prove that he or she was prejudiced by the mistake.[49] Indeed, the standard of review section in Olson's brief acknowledges "[a] defendant *who reasonably and detrimentally relies on incorrect legal advice* in deciding to refrain from acting should not be criminally punished for that failure to act." (Emphasis added). Olson has the burden of proving prejudice from the officer's misstatement; the question remains whether Olson satisfied this burden.

█ The State contends that Olson did not argue that he was actually prejudiced by the implied consent form's misinformation and the court of appeals agreed. Both observed that Olson did not explicitly testify that he would have made a different decision if he had been given correct information. But Olson argues on appeal that his contention in superior court was that he was prejudiced by the police officer's incorrect warning. Olson's motion to dismiss argued:

> There is no doubt that [Olson] was misled as to the consequences of his refusal to take a chemical test and there is no doubt that because of his prior criminal record it had a direct impact upon his ability to make a knowing and intelligent decision as to whether to refuse or not refuse the chemical test.

Olson's motion to suppress added: "Had [Olson] been correctly informed of the consequences, he would have known that he would be facing a felony as opposed to a misdemeanor charge. He would have certainly given greater consideration to his decision knowing that the consequence of his refusal [was] a felony versus a misdemeanor."

We agree with the State and the court of appeals that Olson presented no evidence that he in fact misapprehended the potential class of offense he faced when he refused, but we have never before stated that defendants in Olson's position are required to do so. We cannot fault Olson for not putting forward this evidence because we have not previously said that it is required. Because we now hold that it is Olson's burden to prove that he was prejudiced by the extraneous and incorrect information the officer provided him, we remand this case to give Olson an opportunity to make such a showing. The superior court may allow additional evidence or hold new hearings as it deems necessary.

## V. CONCLUSION

We REVERSE the decision of the court of appeals and REMAND to the superior court for proceedings consistent with this decision.

---

48. *Id.* at 383.

49. *See id.; see also Gonzales v. State Dep't of Licensing*, 112 Wash.2d 890, 774 P.2d 1187, 1193 (1989) (holding that where the arresting officer gave all the required warnings, but they contained additional language which, under certain circumstances was inaccurate, the driver must demonstrate that he was actually prejudiced by the inaccurate warnings); *State v. Ludwigson*, 212 Wis.2d 871, 569 N.W.2d 762, 764 (1997) ("[W]hen an officer has exceeded the duty, and the extra information provided is erroneous, then it is the defendant's burden to prove by a preponderance of the evidence that the erroneous information caused the defendant to refuse to take the test.").