NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| REX RAYMOND RASK,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-11407<br>Trial Court No. 3AN-11-8528 CR<br><br>O P I N I O N<br><br>No. 2550 — April 28, 2017 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: John Page, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD, writing for the Court.
Judge SUDDOCK, concurring.

---

[*]     Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Following a jury trial, Rex Raymond Rask was convicted of felony refusal to submit to a breath test.[1] Rask appeals his conviction, arguing that his due process rights were violated because the police gave him objectively misleading advice regarding the criminal nature of his act of refusing to submit to a breath test.

For the reasons explained here, we agree with Rask, and we reverse the judgment of the superior court.

*Underlying facts and prior proceedings*

In the early morning of July 27, 2011, Rask drove his car into a pole near the Cal Worthington Ford dealership on Gambell Street in Anchorage.

Anchorage Police Officers Rayne Reynolds and Tadd McCauley responded to the accident scene and reported that Rask appeared to be impaired — he had "slurred speech, he appeared disoriented, and he appeared under the influence of something." Rask did not smell of alcohol.

Officer Reynolds administered the horizontal gaze nystagmus test, which Rask failed. After Rask told him that he had hit his head during the accident, Officer Reynolds decided not to continue with any additional field sobriety tests because Rask appeared to need medical attention.

At the hospital, the staff administered a portable breath test to Rask, which measured his blood-alcohol content at 0.00 percent — leading the hospital staff to suspect drug use. Based on this information, Officer Reynolds left the hospital to apply for a search warrant to test Rask's blood for controlled substances.

Before the police could return with the warrant, Rask left the hospital, refusing any more medical treatment. Rask was later found by the police, wandering and

_____

[1] AS 28.35.032(a) & (p).

disoriented, in an area near the hospital. The police arrested him for driving under the influence and transported him to the police station for processing.

*The DUI processing*

Officer Aaron Roberts conducted the DUI processing, which was tape-recorded. As part of the DUI processing, Officer Roberts told Rask that the police had secured a warrant to take a blood test from him. Officer Roberts also told Rask that he was being asked to take a breath test.

Rask appeared confused by what he was being told, and he asked if he was required to submit to the breath test or the blood test.

Officer Roberts told Rask that he did not have a choice as to whether to provide a blood sample because the police had a warrant. But Officer Roberts said that Rask did have a choice as to whether to provide a breath sample. The officer did not explain that it was a crime for Rask to refuse to provide a breath sample:

> *Officer Roberts*: Okay. You want to provide a breath sample?
>
> *Rask*: Ah, do I have to?
>
> *Officer Roberts*: Well ...
>
> *Rask*: A breath sample or ...
>
> *Officer Roberts*: Breath.
>
> *Rask*: ... or blood?
>
> *Officer Roberts*: We've got a search warrant for your blood, but I'm asking if you're willing to — to provide a breath sample.
>
> *Rask*: So — I have to take the breath sample or Breathalyzer?

*Officer Roberts*:  The — we're requesting you to take the Breathalyzer.  You don't have a choice about the blood, because we got a search warrant for the blood.

Following this exchange, Rask asked, "If I take the Breathalyzer now, are you guys going to do away with the blood work?"  Officer Roberts told him, "No, that's not how it works.  You're still going to have to do the blood anyway."  Officer Roberts then read Rask an implied consent warning form, urging Rask to "stay awake" while Roberts read the form.

The standard implied consent form begins, "You are under arrest for the offense of operating or driving a motor vehicle while intoxicated.  You are being asked to submit to a chemical test of your breath to measure the alcoholic content of your breath.  Refusal to submit to a chemical test can either be a class A misdemeanor or a class C felony."  This standard form tracks the statutory language of AS 28.35.031(a), Alaska's implied consent law, which requires a person lawfully arrested for DUI to submit to a chemical test of their breath.

However, Officer Roberts did not read this part of the form.  Instead of reading the warning that applies to persons lawfully arrested for DUI, Officer Roberts read the section of the form that applies to drivers involved in "an accident causing death or serious physical injury."[2]  Thus, the implied consent warning that Rask actually received was as follows:

> You're under arrest for the offense of driving or operating a motor vehicle while intoxicated.  You're being asked to submit to a chemical test of your breath *or blood* to measure the alcoholic content in your breath *or blood*.  Refusal to submit to a chemical test can either be a class A misdemeanor or a class C felony. ...

---

[2]   *See* AS 28.35.031(g).

In other words, instead of telling Rask that he had to submit to a breath test and that refusal to do so was a crime, Officer Roberts told Rask that he had to submit to either a breath test or a blood test and that refusal to submit to one of these two tests was a crime.

(The implied consent advisement that Officer Roberts gave was not only confusing given the multiple chemical tests that Rask was facing, it was also wrong as a matter of law. Alaska Statute 28.35.031(a) authorizes the police to administer a warrantless breath test to a person lawfully arrested for DUI, but it does not authorize the police to administer a warrantless blood test under these circumstances. Indeed, such a law would be unconstitutional. In the recent case *Birchfield v. North Dakota*, the United States Supreme Court struck down various implied consent laws that authorized warrantless blood tests of persons lawfully arrested for DUI, reasoning that blood tests are significantly more intrusive than breath tests and should not be administered without a warrant absent particularized exigent circumstances.[3])

After mistakenly telling Rask that he was being asked to submit to a chemical test of his breath *or* his blood, Officer Roberts read Rask the remainder of the implied consent form. The rest of the form took several minutes to read. It detailed the other legal consequences of a "refusal to submit to a chemical test" (again, without differentiating between a test of breath or blood). After completing the form, Officer Roberts asked Rask if he agreed to submit to the breath test.

At this point, Rask appears to have become unresponsive, and he required prompting by the officer:

> *Officer Roberts*: The type of test you [are] requested to take is breath. Neither your right to speak to an attorney nor your right to remain silent gives you the right to refuse a chemical test. Do you — Hello?

---

[3]   *Id.*; *see also Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013) (dissipation of alcohol in blood does not create sufficient exigency to justify warrantless blood test).

*Rask* [apparently drowsing]:  Hmm?

*Officer Roberts*:  Do you agree to submit to the breath test?

*Rask*:  Ah, ...

*Officer Roberts*:  Or do you refuse?

*Rask*:  Ah, I refuse ... If it's ... my right, I refuse the blood test and the Breathalyzer.

*Officer Roberts*:  Okay.  Well, I'm going to indicate that you refused the Breathalyzer.  However, you don't have a right to refuse the blood test, because Officer Reynolds got a search warrant.

Officer Roberts then left the room to make a phone call.  Rask asked Officer Reynolds (the officer who had secured the warrant for the blood test, and who had been present during the DUI processing):  "If I did the Breathalyzer, would you guys let me go on the — on this blood [test]?"  Officer Reynolds could not initially understand Rask's question because he was slurring his speech so badly.  Rask asked two more times if the police would still "stick [him] with a bunch of needles" if he agreed to take the breath test.  Officer Reynolds told Rask that the blood test would be performed even if Rask took the breath test.

Officer Roberts, who had returned from the phone call, then read Rask the vehicle impoundment form.  While Officer Roberts was reading this form, Rask fell from his chair.

Officer Roberts also read a form to Rask informing him of his right to an independent blood test.  After reading Rask this form, Officer Roberts asked Rask whether he wanted to exercise his right to an independent blood test.  Rask continued to express confusion about what the independent blood test was, and whether it was different from the blood test that the police were going to administer pursuant to the warrant.  Rask requested Officer Roberts read the form again.  The officer made Rask

– 6 –                                                                 2550

"promise [to] stay awake," and then he read the form a second time. After the second reading, the officer had to ask Rask multiple times if he wanted to take an independent blood test before he finally answered no.

At this point, Officer Reynolds took over reading the rest of the forms (which covered the license revocation consequences of a refusal), stating that "I can zip through them and [Rask is] sleeping." Officer Reynolds subsequently told Rask to listen up and not to sleep. Rask said "okay," but the remainder of his responses on the recording are mumbled and indiscernible. Following the DUI processing, Rask's blood was drawn and tested pursuant to the search warrant.

Rask was subsequently indicted on charges of felony driving under the influence[4] and felony refusal to submit to a breath test.[5]

The State later voluntarily dismissed the felony DUI charge after it received the results of the blood test. The blood test revealed that Rask had ingested phenazepam, a sedative drug in the benzodiazepine family with similar qualities to Xanax. Manufactured in Russia, phenazepam is not listed as a controlled substance under federal or state law.[6]

Rask filed a motion to dismiss the refusal charge, arguing, *inter alia*, that the police had failed to properly advise him of the criminal consequences of his decision not to take the breath test. The superior court denied Rask's due process claim,

---

[4]   AS 28.35.030(a) & (n).

[5]   AS 28.35.032(a) & (p). Rask was also charged with and convicted of driving while license revoked and fourth-degree escape. These convictions are not at issue in this appeal.

[6]   *See* AS 28.35.030(a)(1) ("A person commits the crime of driving while under the influence of ... [a] controlled substance if the person operates or drives a motor vehicle ... while under the influence of ... any controlled substance[.]"); *see also* AS 28.35.039 & AS 28.33.190.

concluding that "the police did not misinform Rask of the statutory penalties and consequences for refusing to submit to the chemical breath test."

Rask was subsequently convicted of felony breath test refusal. This appeal followed.

### *The legal advisements given in Rask's case were misleading and inadequate*

Under Alaska law, a motorist lawfully arrested for driving under the influence must submit to a breath test when requested or risk prosecution for the separate crime of breath test refusal.[7] Alaska law penalizes the crime of refusal to the same extent as the underlying crime of driving under the influence.[8]

Breath test refusal is a crime of omission.[9] Due process therefore requires that the defendant be given adequate notice of his legal duty to take the breath test.[10] This is typically achieved by notifying the defendant that refusal to submit to a breath test is itself a crime.[11] Because the criminal consequences of refusal are so severe, "care must be taken to [ensure] that the arrested person is not misled about his or her rights, or the absence thereof, under the implied consent statute."[12] Thus, in *Graham v. State*,

---

[7]   *See* AS 28.35.031(a); AS 28.35.032(a) & (f).

[8]   *See* AS 28.35.030 & AS 28.35.032.

[9]   *See Yang v. State*, 107 P.3d 302, 309 (Alaska App. 2005).

[10]  *Id.*

[11]  *See* AS 28.35.032(a).

[12]  *Graham v. State*, 633 P.2d 211, 214 (Alaska 1981); *see also Olson v. State*, 260 P.3d 1056, 1060 (Alaska 2011) (noting that in Alaska, arrestees have the power to refuse, meaning the police may not administer the test if a person continues to refuse after being informed that refusal is a crime but that there is no constitutional, statutory, or implied right to refuse to

(continued...)

our supreme court held that "[when] an arrested person refuses to submit to a [breath] test, the administering officer must inquire into the nature of the refusal and, if it appears that the refusal is based on a confusion about a person's rights, the officer must clearly advise that person [as to their actual rights.]"[13] That is, the officer must explain that the arrested motorist has no "right" to refuse the breath test without suffering adverse consequences, and that refusal to submit to the breath test is a crime.

We have reviewed the DUI processing tape in this case and we conclude that the advisements given here were inadequate to satisfy the demands of due process. A significant part of the problem is the unusual circumstances of this case.

Typically, a person is asked to submit to a breath test as a substitute for the police securing a warrant for the more invasive blood test.[14] Here, however, the police had already secured a warrant for a blood test. Moreover, they had done so based largely on the fact that the portable breath test administered earlier at the hospital had not indicated any alcohol in Rask's breath sample. Given these circumstances, a reasonable person might well be confused about why the police were seeking *both* a blood test and a breath test, and why *both* tests would be required under the law.

Given these circumstances, it was incumbent on the police to make sure Rask received adequate notice that both tests *were* legally required — that is, the blood test was legally required pursuant to the warrant and the breath test was legally required under Alaska's implied consent law. But this is not what happened. Instead, the officer

---

[12] (...continued)
take a breath test); *Copelin v. State*, 659 P.2d 1206, 1212 (Alaska 1983) (holding that arrestees have no right to refuse, but do have a power to refuse).

[13] *Graham*, 633 P.2d at 215.

[14] *See, e.g.*, *Pena v. State*, 684 P.2d 864 (Alaska 1984); *State v. Evans*, 378 P.3d 413 (Alaska App. 2016).

misread the implied consent form and told Rask he had a duty to submit to a "chemical test of his breath *or* blood," or face criminal prosecution for "refusal to submit to a chemical test."

The officer also repeatedly framed the decision of whether to take the breath test as a "choice" that Rask was allowed to make — a choice that the officer distinguished from the blood test, over which Rask had no such "choice."

> *Officer Roberts*: We've got a search warrant for your blood, but I'm asking if you're willing ... to provide a breath sample.
>
>     . . . .
>
> *Officer Roberts*: [W]e're requesting you to take the Breathalyzer. You don't have a choice about the blood, because we got a search warrant for the blood.
>
>     . . . .
>
> *Rask*: [If] I take the Breathalyzer now, are you guys ... going to [forgo] the blood work?
>
> *Officer Roberts*: No, that's not how it works. You're still going to have to do the blood anyway.

In effect, Rask was told that he had a legal duty to submit to *either* a breath test *or* a blood test, and that he had no choice about the blood test, but that he did have a choice as to whether to take the breath test *in addition to* the blood test.

In the recording of the DUI processing, Rask sounds confused about what is being asked of him. Although Rask's confusion may have stemmed, at least in part, from his apparent intoxication, we conclude that a reasonable, sober person in these circumstances would also have been confused by these advisements. That is, a sober person receiving these advisements could have reasonably believed that they were free to exercise the one choice that was being offered to them — the choice to refuse the breath test.

In the recording, Rask told the officers that he would refuse both tests "*if it's ... my right.*" (Emphasis added.) In response, the officer made no attempts to clarify that Rask had no "right" to refuse the breath test. Nor did the officer make any attempts to clarify that Rask would face criminal prosecution for refusing to take the breath test. Instead, the officer simply announced that Rask had no right to refuse the *blood* test (because the police had a warrant to draw his blood), and that he (the officer) was going to mark down that Rask refused the breath test.

Rask's subsequent attempt to try to convince the other officer to let him trade the blood test for the breath test further suggests that Rask believed that the circumstances were as he had been told — *i.e.*, that he was legally required to submit to a chemical test of *either* his breath *or* his blood.

In its briefing on appeal, the State focuses on the independent test advisement that the officers gave to Rask *after* they had recorded his refusal to take the breath test. The State points out that, unlike the earlier erroneous advisements, this later advisement correctly stated that "if you refuse to submit to a chemical test of your breath, you'll be charged with driving under the influence and a refusal to submit to a chemical test, whether or not you decide to take an independent test." The State argues that this advisement cured any deficiencies in the earlier advisements. But this advisement did not occur until after the police had already recorded that Rask had refused the breath test, and the officers did not offer Rask any renewed opportunity to take the breath test following this advisement. Moreover, by this point in the processing, Rask was falling off his chair, nearly incoherent, and the officers needed to repeatedly wake him up.

We acknowledge that police officers often face a difficult task in explaining a motorist's rights and responsibilities to an intoxicated suspect during DUI processing. But as our supreme court has explained, the decision to take or refuse a breath test "is not

a simple one," and it "requires careful consideration."[15]   Where, as here, a suspect's refusal is based on an obvious confusion about his or her rights, the police have an obligation to clarify those rights to ensure that the motorist's decision is not "based on an ignorance of the actual consequences of refusing."[16]

Here, the record demonstrates that proper care was not taken, and that Rask remained confused about his rights.  Given the circumstances of this case, we conclude that Rask could not reasonably be expected to understand the criminal consequences of refusing the breath test from the advisements he received.  The superior court therefore erred in finding these advisements adequate for purposes of assuring Rask's due process rights.

*Conclusion*

We REVERSE the judgment of the superior court.

---

[15]   *Olson*, 260 P.3d at 1061.

[16]   *Id.* at 1061-62.

Judge SUDDOCK, concurring.

With some frequency, impaired drivers compound their reckless decision to drive a vehicle with a second reckless decision — a decision to commit an independent crime by refusing to take a breath test. We have today determined that Rask's refusal was influenced by confusion arising from relatively unique circumstances particular to his case. But even absent such circumstances, refusal is not uncommon. The recurrence of this crime raises the question of whether the State's breath test warning is too often failing in its mission to alert drivers that it is usually folly to refuse the breath test.

I conclude that the State's warning is less than optimally effective because, while it explicitly purports to be a warning, it is not written like one. Over the past half-century, industrial engineers have honed the science of effectively warning persons against diverse hazards. The State's breath test warning violates nearly every principle of this discipline.

Arguably, the warning does not speak bluntly enough. It is labeled as an "Implied Consent Warning," a phrase devoid of meaning to most. The breath test is verbosely termed a "chemical test of your breath to measure the alcoholic content of your breath." The driver is not commanded but rather is "asked" or "requested" to take a breath test. This wording suggests that the driver has a right to refuse to take the test, when, in fact, drivers have no more right to refuse the test than they do to commit any other crime. And the driver is informed that a refusal "can be" either a felony or a misdemeanor — wording that implies that in some instances, a refusal might not be a crime at all.

And at this moment when an impaired driver may be poised to commit a self-destructive crime, the driver's peril is perhaps obscured by too much information.

For example, the driver is made to listen to all of the complicated factors that make a breath test refusal a felony versus a misdemeanor, and to the maximum sentences and fines for each level of crime.

Lastly, the advisement is not only too wordy, it is also too polite — subliminally suggesting that a breath test refusal is not an antisocial act. For example, the breath test warning informs drivers that if they refuse the breath test, a "law enforcement officer" will provide them a document explaining how to contest their ensuing (and inevitable) license revocation.

Under AS 28.35.032(a), the breath test warning need only make three points: a refusal is a crime, a refusal also entails loss of driving privileges, and a refusal is admissible evidence against the refuser. I believe that the breath test warning would be more effective if it confined itself to those essentials. In addition, an effective warning would perhaps include a large-font notice near the refusal check box entitled "WARNING" to re-emphasize that to check the refusal box is to commit a serious crime entailing a mandatory jail sentence and other consequences.

In sum, if the State were to substitute a shorter and more cogent breath test warning, employing proven techniques for maximum impact, the number of breath test refusals might significantly decrease. It seems to me that the spirit, if not the letter, of due process calls out for such a change.

– 14 –                                                                                                           2550