NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| CORY LYNN STONER,<br><br>            Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>            Appellee. | Court of Appeals No. A-11976<br>Trial Court No. 3AN-12-11922 CR<br><br>O P I N I O N<br>as amended on rehearing<br><br>No. 2588 — February 23, 2018 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Warren W. Matthews and Michael L. Wolverton, Judges.

Appearances: Brooke Berens, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and James E. Cantor, Acting Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge MANNHEIMER.

Cory Lynn Stoner, a felony probationer, absconded from a halfway house. Stoner had been placed there by the Department of Corrections while he awaited sentencing for violating his felony probation.

Under Alaska law, a felony defendant who absconds from official detention is guilty of a class B felony — second-degree escape. But the residents' handbook at Stoner's halfway house erroneously stated that felony defendants who absconded from the facility would be guilty of "unlawful evasion". Stoner was aware (apparently, from previous experience, and perhaps from conversations with other residents of the halfway house) that the crime of "unlawful evasion" was only a misdemeanor. According to Stoner, he decided that it was worth the risk to abscond from the halfway house, since he believed that the penalty was no more than one year in prison.

After Stoner was indicted for second-degree escape, he asked the superior court to dismiss this felony charge. Stoner argued that the halfway house handbook was at least partially responsible for misleading him into thinking that his crime was only a misdemeanor. Stoner further argued that because the halfway house was operating under a contract with the Department of Corrections, any misleading information in the handbook should be attributed to the State of Alaska itself. Thus, Stoner concluded, even though he absconded from the halfway house, it was unfair for the State of Alaska to prosecute him for a felony.

The superior court denied Stoner's motion to dismiss the indictment, and Stoner was ultimately convicted of second-degree escape.

Stoner now appeals his conviction, renewing his argument that it is unfair to convict him of felony escape when the information in the halfway house handbook was at least partially responsible for leading him to believe that his crime would only be a misdemeanor.

For the reasons explained in this opinion, we affirm Stoner's felony conviction.

*Underlying facts*

In November 2012, Cory Lynn Stoner was facing petitions to revoke his probation in two felony cases. The superior court had already found that Stoner violated his probation, and he was awaiting sentencing for these violations.

Pending his sentencing, the Department of Corrections placed Stoner at a halfway house — the Parkview Center. The Parkview Center was owned and operated by a private company, under contract with the Department of Corrections.

About a week after Stoner was transferred to the Parkview Center, the staff discovered a mobile phone and a telephone card hidden under his mattress. This was a violation of the Center's rules, and Stoner knew that he would be sent back to jail. So instead, Stoner fled.

Stoner was apprehended about three months later, and he was charged with second-degree escape under AS 11.56.310(a)(1)(B). This statute makes it a class B felony to unlawfully "remove[] oneself from ... official detention for a felony".

Stoner asked the superior court to dismiss this felony charge on the ground that the Parkview staff misled him as to the seriousness of the crime he would commit if he absconded from the Parkview Center.

Stoner's argument was based on the fact that, during his orientation session at the Parkview Center, he was given a 52-page residents' handbook. One passage in this handbook warned Parkview Center residents that they were not allowed to leave the Center without authorization. The handbook then mistakenly stated that residents who were in custody for a felony would be charged with "unlawful evasion" under AS 11.56.340 if they left the halfway house without permission.

In fact, AS 11.56.340 does not apply to felony prisoners who abscond from a halfway house. Instead, this statute applies to misdemeanor prisoners — persons

"charged with or convicted of a misdemeanor" — who fail to return to official detention after they have been granted a "temporary leave ... for a specific purpose or [for a] limited period".

The statute that applies to Stoner's situation is the second-degree escape statute under which he was indicted, AS 11.56.310(a)(1)(B).

But in Stoner's motion to dismiss, he asserted that he had relied on the mistaken information in the Parkview handbook when he made his decision to abscond — *i.e.*, the handbook's mistaken description of the crime as "unlawful evasion".

The Parkview handbook did not say that this offense was a misdemeanor. In fact, the handbook did not make any assertion as to what level of offense "unlawful evasion" was. However, Stoner asserted that he already knew, based on his prior experience in the criminal justice system, and based on his conversations with other Parkview inmates, that the crime of "unlawful evasion" was a misdemeanor.[1]

Stoner claimed that he decided to abscond from the Parkview Center because he weighed the risk of spending up to one additional year in jail, and he concluded that it was worth it. He asserted that he would not have absconded if he had known that he could be prosecuted for a felony.

The superior court accepted Stoner's factual assertions as true, but the court nevertheless denied Stoner's motion to dismiss the indictment. The court concluded that even if Stoner mistakenly believed that he was committing a misdemeanor rather than a felony, this did not entitle Stoner to dismissal of the felony escape charge.

Following a jury trial, Stoner was convicted of second-degree escape. He now appeals that conviction, renewing his argument that the felony charge should have

---

[1]   AS 11.56.340(b).

been dismissed because of the mistaken information in the Parkview Center's residents' handbook.

*Our analysis of Stoner's claim*

In his briefs to this Court, Stoner argues that it violates the constitutional guarantee of due process for the State to prosecute and convict him of felony escape, when he mistakenly believed that his act of absconding from the halfway house was only a misdemeanor. But Stoner's claim is contrary to an established doctrine of criminal law.

It is a general principle of the criminal law that a person's ignorance of a criminal statute, or a person's misunderstanding of a criminal statute, is not a defense to a prosecution under that statute. This principle is codified in AS 11.81.620(a):

> *Effect of ignorance or mistake upon liability.*
>
> (a) Knowledge, recklessness, or criminal negligence as to whether conduct constitutes an offense, or knowledge, recklessness, or criminal negligence as to the existence, meaning, or application of the provision of law defining an offense, is not an element of an offense unless the provision of law clearly so provides. Use of the phrase "intent to commit a crime", "intent to promote or facilitate the commission of a crime", or like terminology in a provision of law does not require that the defendant act with a culpable mental state as to the criminality of the conduct that is the object of the defendant's intent.

Based on due process concerns, the Alaska appellate courts have recognized a limited exception to this principle in situations where a person acts in reasonable reliance on an official pronouncement or a formal interpretation of the law issued by the chief enforcement officer or agency entrusted with the enforcement of that law. *Stevens*

*v. State*, 135 P.3d 688, 695 (Alaska App. 2006); *Ostrosky v. State*, 704 P.2d 786, 791 (Alaska App. 1985). [2]

But this limited "mistake of law" defense is not available to people who rely on a mistaken statement or interpretation of the law received from a police officer or other subordinate officer. *Morgan v. State*, 943 P.2d 1208, 1212 (Alaska App. 1997); *Haggren v. State*, 829 P.2d 842, 844 (Alaska App. 1992).

And, of course, this defense is not available to people who form their own mistaken opinion about the law. *Stevens*, 135 P.3d at 695; *Busby v. State*, 40 P.3d 807, 816-17 (Alaska App. 2002).

In the present case, Stoner claims that his decision to abscond from the halfway house was prompted, at least in part, by his mistaken belief that his potential punishment for this crime would not exceed one year in prison (the maximum sentence for a class A misdemeanor).

But Stoner does not contend that the Parkview staff told him that his act of absconding would be a misdemeanor, or that the Parkview handbook stated that his act of absconding would be a misdemeanor. Rather, Stoner asserts that (1) the halfway house handbook erroneously described the name of his crime as "unlawful evasion", and (2) Stoner relied *on his own personal knowledge* (based on his prior experience in the criminal justice system, as well as conversations he had with other offenders) that the crime of unlawful evasion was a misdemeanor.

Given these circumstances, Stoner's claim amounts to the assertion that he falsely concluded, based on inferences he personally drew, that his act of absconding

---

[2]    *See also Morgan v. State*, 943 P.2d 1208, 1212 (Alaska App. 1997); *Haggren v. State*, 829 P.2d 842, 844 (Alaska App. 1992).

would be a misdemeanor. Thus, Stoner's claim is foreclosed by the decisions in *Stevens*, *Busby*, *Morgan*, and *Haggren*.

In his briefs to this Court, Stoner contends that the "mistake of law" doctrine does not defeat his claim. He argues that, under the Alaska Supreme Court's decision in *Olson v. State*, 260 P.3d 1056 (Alaska 2011), he could not be prosecuted for felony escape.

*Olson* involved a motorist who was arrested on suspicion of driving under the influence, and who refused to take a breath test. [3] Under the pertinent statute, when an arrested motorist indicates that they will not take a breath test, the police must advise the motorist that failure to take the test is a separate crime. [4]

In Olson's case, the police officer informed him that failure to take the test would be a crime — but the officer then went beyond this legal duty, by telling Olson that his act of refusing the breath test could be either a felony or a misdemeanor, depending on Olson's prior DUI record. Then the officer misdescribed what kind of prior record would lead to a felony charge. Based on the officer's erroneous description of the law, Olson could reasonably have concluded that his refusal to take the breath test would only be a misdemeanor, when in fact his refusal would be a felony. [5]

Olson ultimately refused to take the breath test, and he was indicted for felony breath-test refusal. Olson argued that he was denied due process of law because he was forced to choose whether to take the breath test after he received the police

---

[3]  *Olson*, 260 P.3d at 1058.

[4]  AS 28.35.032(a).

[5]  *Olson*, 260 P.3d at 1058-59.

officer's erroneous description of the law — a description which misleadingly informed Olson that he would face only a misdemeanor penalty for refusing. [6]

The supreme court agreed that Olson had been denied due process of law in this situation:

> [D]ue process concerns can arise if the information [given to an arrested motorist] understates the consequences of the offense. Misinformation can impair an arrestee's ability to make an informed decision about [the] potential consequences flowing from his refusal, and may actually discourage the arrestee from taking the test. The decision ... whether to comply with an arresting officer's request to take a sobriety test is not a simple one, and ... it should not be based on an ignorance of the actual consequences of refusing. Here, the [officer's warning] understated the penalties for Olson's refusal. We conclude it would be fundamentally unfair to allow the State to [inform an arrestee of] one penalty, on which the arrestee's decision relies, and then later convict him of a charge that carries a greater penalty.

*Olson*, 260 P.3d at 1061 (internal quotations and footnotes omitted).

It is unclear to what extent the decision in *Olson* may have overturned or limited the series of Alaska cases holding that a defendant can only claim "mistake of law" when the defendant's mistaken belief about the law is based on an official pronouncement or a formal interpretation of the law issued by the chief enforcement officer or agency entrusted with the enforcement of that law.

But in any event, *Olson* involved a direct misstatement of law by a police officer who was holding the defendant in custody, and who was demanding that the

---

[6]  *Id.* at 1059-1060.

defendant make an immediate choice between (1) supplying the government with potentially incriminating evidence or (2) committing a new crime.

Here, Stoner is claiming that he reached an erroneous conclusion about the law of escape, not based on the direct statement of a police official, but rather based on the combination of (1) a misstatement in a handbook written by a contractor working for the Department of Corrections and (2) Stoner's own personal understanding of the law.

Moreover, no state officer demanded that Stoner immediately choose between absconding from the halfway house or staying in custody to await his sentencing hearing.

For these reasons, we conclude that the Alaska Supreme Court's decision in *Olson* does not apply to Stoner's situation.

Stoner argues in the alternative that even if he is not entitled to relief under *Olson*, he is entitled to relief under the doctrine of "equitable estoppel". Stoner contends that the State should be estopped from imposing any greater penalty for his act of escape than the misdemeanor penalty that Stoner claims he expected — *i.e.*, no more than one year in jail.

But even assuming that the doctrine of equitable estoppel applies to people who affirmatively decide to commit acts that they know to be unlawful (an issue that we do not decide),[7] the doctrine of equitable estoppel does not apply to all instances where

---

[7] Compare *Arnett v. State*, 938 P.2d 1079 (Alaska App. 1997), a case in which the defendant claimed that he received ineffective assistance of counsel because his defense attorney allegedly advised him to abscond during trial, and assisted him in doing so. This Court held that, under these circumstances, the law would not allow a defendant to raise a claim of ineffective assistance: "Arnett makes no claim of ignorance as to the unlawfulness of his conduct and no assertion that he was importuned by his attorney or entrapped by her into absconding. In these unique circumstances, we think it proper to bar Arnett's attempt to take advantage of his attorney's purported incompetence." *Id.*, 938 P.2d at 1082-83.

a person relies on mistaken information received from, or disseminated by, the government. As explained by our supreme court in *Anchorage v. Schneider*, 685 P.2d 94 (Alaska 1984):

> The general elements of equitable estoppel are (1) assertion of a position by conduct or word, (2) reasonable reliance thereon, and (3) resulting prejudice. A fourth element, most often explicitly stated in promissory estoppel cases, is that the estoppel will be enforced only to the extent that justice so requires. We believe that this [fourth] factor should play an important role when considering estoppel against [the government]. Often, even where reliance has been foreseeable, reasonable, and substantial, the interest of justice may not be served by the application of estoppel because the public interest would be significantly prejudiced.

*Schneider*, 685 P.2d at 97 (citations and footnotes omitted).

Thus, Stoner's claim of equitable estoppel required him to show (1) that he reasonably relied to his detriment on mistaken information from the government, and (2) that estopping the government from enforcing the law of escape in these circumstances is required in the interest of justice.

The superior court rejected Stoner's equitable estoppel claim because the court concluded that the public had a significant interest in punishing Stoner's act of escape (to preserve public safety and order), while at the same time there was little equity in allowing Stoner to avoid the prescribed punishment for a crime that he committed after engaging in a "criminal calculus" — by which the court meant Stoner's "risk/benefit analysis of removing himself from official detention" to prevent or delay his sentencing.

We agree with the superior court's assessment, especially in light of what our supreme court said in *Division of Insurance v. Schnell*, 8 P.3d 351 (Alaska 2000): "We have rarely applied estoppel to bar the state's exercise of its sovereign police powers" because "where a government acts for the good of its citizens rather than a narrow proprietary interest, estoppel would be unjust to the public." *Id.* at 355-56.

Accordingly, we uphold the superior court's rejection of Stoner's equitable estoppel claim.

*Conclusion*

The judgement of the superior court is AFFIRMED.